ALLTEL CORPORATION and Alltel Communications, Inc. *v.* Paul SUMNER and Charles Miller, Individually and On Behalf of All Persons Similarly Situated

04-279                                                     203 S.W.3d 77

Supreme Court of Arkansas
Opinion delivered February 10, 2005

---

*Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass* and *Jamie Huffman Jones* for appellants.

*Emerson Poynter LLP*, by: *Scott E. Poynter* and *John G. Emerson, Jr.*; and *Terry M. Poynter, P.A.*, by: *Terry M. Poynter*, for appellees.

ANNABELLE CLINTON IMBER, Justice. The appellees, Paul Sumner and Charles Miller, individually and on behalf of all others similarly situated, filed a class-action complaint against the appellants, Alltel Corporation and Alltel Communications, Inc., (collectively hereinafter "Alltel"). In their complaint, Sumner and Miller assert one count of deceptive trade practices in violation of the Arkansas Deceptive Trade Practices Act. Ark. Code Ann. §§ 4-88-101, *et. seq.* (Repl. 1999). Specifically, they claim that

> [b]eginning sometime in the year 2000, Alltel falsely advertised and offered unlimited monthly wireless telephone services, subject to fixed roaming charges to [Sumner and Miller] and the Class Members for $49.95 for various terms and durations. Indeed, some of the ads even said the $49.95 rate would last for the life of the customer.

As a result of the advertising campaign, Sumner and Miller subscribed to Alltel's wireless telephone service in accordance with the terms set forth in the advertised rate plan. The class-action complaint further states that within months after signing up thousands of customers, including Sumner and Miller, Alltel sent letters to them announcing an increase in the monthly rate from $49.95 to $59.95, as well as an increase in the roaming rate, with the increases to be effective July 16, 2001. Alltel responded to the complaint by filing a motion to dismiss or stay pending resolution of the arbitration issue in another case[1], or, in the alternative, to compel arbitration. In its motion, Alltel stated

---

[1] A similar nationwide-class action complaint was filed against Alltel in Ohio in connection with the July 2001 rate increase. As in this case, Alltel sought to compel arbitration and that motion was still pending in the Ohio court as of the time Sumner and Miller filed their complaint.

Sumner and Miller signed a service contract that included an arbitration clause.[2] According to Alltel, the arbitration clause states:

> Any dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration administered by the American Arbitration Association. Each party will bear the cost of preparing and prosecuting its case. We will reimburse you for any filing or hearing fees to the extent they exceed what your court costs would have been if your claim had been resolved in a state court having jurisdiction. The arbitrator has no power or authority to alter or modify these Terms and Conditions, including the foregoing Limitation of Liability section. All claims must be arbitrated individually, and there will be no consolidation or class treatment of any claims. This provision is subject to the United States Arbitration Act.

Sumner and Miller filed a brief opposing Alltel's motion to dismiss or stay, and the circuit court denied Alltel's motion without a hearing.

Shortly thereafter, Alltel filed a motion for reconsideration, a hearing and amendment to order. The circuit court vacated its earlier order and held a hearing. At that point, Alltel submitted the affidavit of John Chapman, Director of Retail Sales for Alltel, which states in relevant part:

> 3. Based on my knowledge of Alltel's practices and procedures, the Agreement for Communications Services Terms and Conditions, which is attached hereto as Exhibit "A," would have been given to the Plaintiffs prior to the initiation of service.
>
> 4. No Alltel wireless customer would receive service until such time as an Agreement for Communications Services Terms and Conditions, or its predecessor, would have been in place.[3]

Ultimately, the court entered an order denying Alltel's motion, which order is the subject of this appeal by Alltel.

---

[2] Alltel later conceded during a hearing that it mistakenly alleged the contracts were signed by Sumner and Miller; instead, Alltel claimed that Sumner and Miller were subject to the terms of the service contracts.

[3] No "Exhibit A" is attached to the affidavit. We must assume that the Exhibit A referred to in the affidavit is the same Exhibit A attached to Alltel's motion to dismiss and brief in support thereof.

In its order, the circuit court denied Alltel's motion to dismiss or stay, or, in the alternative, to compel arbitration and stated, "[Alltel] offered insufficient proof that the arbitration clause was communicated to the Plaintiffs or that the Plaintiffs should be bound by Defendants' asserted common clause. The affidavit of John Chapman, alone, is insufficient to prove that the Plaintiffs were given a contract which provided for the requirement of arbitration . . . ." An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002); *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001); *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). We review a circuit court's order denying a motion to compel arbitration *de novo* on the record. *Id.*

The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Cash in a Flash Check Advance of Arkansas, LLC, v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002). Thus, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Id.* Furthermore, the construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001).

A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001). Both parties must manifest assent to the particular terms of the contract. *Van Camp v. Van Camp*, 333 Ark. 320, 969 S.W.2d 184 (1998). In this case, Alltel argues that "assent was indicated by the continued use and benefit of ALLTEL services." In support of this proposition, they cite *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997). In *Hill*, the plaintiff ordered a computer over the telephone. The terms and conditions, which

contained an arbitration clause, were included in the box with the computer. The court determined that the arbitration clause was enforceable because the buyer, after being given notice of the terms, kept the computer. Similarly in *Stiles v. Home Cable Concepts*, 994 F.Supp. 1410 (M.D. Ala. 1998), the court enforced the amended terms of an agreement where the amended terms were mailed to the plaintiff, and he acknowledged receipt of the notice.

The above cases are distinguishable from the case at hand because, in each case, it was shown that the party had received the agreement. For a party to assent to a contract, the terms of the contract must be effectively communicated. *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). Here, the only evidence introduced by Alltel that Sumner and Miller had received notice was the Chapman affidavit stating that Altell's practice and procedure is to provide copies of the terms and conditions prior to the initiation of service. We must decide if this affidavit is sufficient evidence to establish that Sumner and Miller, in fact, received the agreement. Another federal court decision cited by Alltel, *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), assists us with the analysis of this question.

In *Tinder*, an at-will employee sued her employer for employment discrimination and retaliation. The employer moved to compel arbitration. The employee, Tinder, claimed she had no notice of the arbitration clause that was sent by a brochure to employees after the commencement of her employment. However, the employer provided two affidavits containing detailed information about how the information was distributed to its employees. *Id.*

According to the employer's director of employee relations, the central office distributed copies of the brochure to each of its district offices with instructions to insert it as a payroll stuffer in the envelope along with each employee's paycheck. The director further averred that the employer sent a memo to its district offices emphasizing the importance of the program and the need to promptly distribute the brochures, and the legal department issued a second memo confirming that the brochure had been distributed to all the district offices. *Id.* In the second affidavit, the manager of the employer's second office in Milwaukee asserted that the employee, Tinder, was paid through his office; that his office distributed the brochures to all employees along with their paychecks on the payday following the date the district offices had been instructed to circulate the brochure; and that Tinder received

her salary by check, not by direct bank deposit into a bank account. *Id.* In light of the specific information provided by the employer, Tinder's general denial that she did not receive notice was not enough to avoid arbitration. In sum, the court concluded that Tinder received notice of the arbitration clause. *Id.*

In this case, Sumner and Miller agree that they subscribed to Alltel's wireless telephone service, but submit no evidence of knowledge about the service agreement and its terms and conditions.[4] In response, Alltel relies on the Chapman affidavit to suggest that because its practice and procedure is to provide copies of the terms and conditions prior to the initiation of service, notice was established. However, unlike the detailed affidavits in *Tinder v. Pinkerton, supra,* the affidavit provided by Chapman solely confirms Alltel's practices and procedures without any information regarding whether those practices and procedures were followed at the time Sumner and Miller subscribed to Alltel's service. We have found no case law suggesting that notice can simply be inferred from a company's statement of its practices and procedures; rather, as in the *Tinder* case, there must be specific evidence that the company implemented those practices and procedures such that notice to the affected party can be reasonably inferred from the circumstances.

Moreover, Chapman also stated in his affidavit that "no Alltel wireless customer would receive service until such time as an Agreement for Communications Services Terms and Conditions, or *its predecessor,* would have been in place." Because we have no record of a predecessor contract, we are unable to conclude whether it even contained an arbitration clause. Furthermore, one of the arbitration clauses quoted in Alltel's brief in support of the

---

[4] We reject Alltel's attempt during oral argument to interpret the following footnote in the brief submitted by Sumner and Miller as an admission that they had seen the terms and conditions of the agreement:

> Appellants' brief repeatedly states that Appellees took the position that they denied seeing the alleged written agreement, but that is not true. Appellees position has always been that Appellants erroneously contended that a signed contract existed between the parties, and had failed to meet its burden in proof by not producing the signed agreement.

The footnote merely reflects that Sumner and Miller dispute Alltel's statements attributing a particular position to them.

motion to dismiss does not contain the same language as the arbitration clause contained in the agreement submitted as "Exhibit A." According to the brief, the service agreement provides that "any disputes arising out of the Service Agreement must be resolved by binding arbitration." As noted earlier, the arbitration clause in the service agreement submitted as "Exhibit A" states in part, "Any dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration administered by the American Arbitration Association." Such an inconsistency also supports the conclusion that more than one service agreement may exist. Accordingly, we affirm the circuit court's finding that there is insufficient proof that Sumner and Miller were given a contract which provided for the requirement of arbitration. Because the additional issues argued by Sumner and Miller[5] presume the existence of a contract requiring arbitration, we need not address those issues.

Affirmed.

Special Justices ELDON F. COFFMAN, JIM H. BOYD, and ROBIN GREEN join.

BROWN, J., DICKEY, J., and GUNTER, J., not participating.

CORBIN, J., not participating in the final decision.

---

[5] Sumner and Miller sought to have additional points addressed on appeal, arguing that the arbitration clause does not apply to the false-advertising claim, that the arbitration terms of the contract were procured by fraud, and that the arbitration clause is unenforceable because it lacks mutuality and is unconscionable.