

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-13-198

DIAMANTE, A Private Membership
GOLF CLUB, LLC
                               APPELLANT

V.

GARY DYE and LINDA DYE
                               APPELLEES

**Opinion Delivered** November 6, 2013

APPEAL FROM THE SALINE
COUNTY CIRCUIT COURT
[NO. 63CV-12-90]

HONORABLE GARY ARNOLD,
JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Chief Judge

Appellant Diamante, a Private Membership Golf Club, LLC (Club), appeals the November 14, 2012 order of the Saline County Circuit Court denying its motion to compel arbitration. The Club argues that it did not waive its right to compel arbitration; that its transaction with appellees Gary and Linda Dye did involve interstate commerce and required the application of the Federal Arbitration Act (FAA); and that there was an agreement to arbitrate between the parties. Although we hold that there was a valid arbitration clause contained in an agreement between the parties, we affirm the circuit court's denial of the Club's motion to compel arbitration under the specific facts of this case.

Appellees own Lot 5, Block 20 in the Diamante Subdivision of Hot Springs Village, Saline County, Arkansas. On February 2, 2012, appellees filed a petition for declaratory judgment asking the circuit court to declare unenforceable the membership-and-dues requirement contained in the Corrected Supplemental Declaration of Covenants and

Restrictions (Supplemental Declaration) filed on December 18, 1997, in connection with their lot in Hot Springs Village.

Appellees signed a contract when they purchased their lot that indicated that their membership and obligation to pay dues would be subject to the articles, by-laws, if any, and rules and regulations of the Club as revised or amended by the Club or any owner of the Club in its sole discretion. Furthermore, the Supplemental Declaration, which is the subject of appellees' petition for declaratory judgment, states that they shall pay dues and that the membership shall be subject to the provisions and limitations in the Supplemental Declaration and in accordance with the articles, by-laws, if any, and rules and regulations of the Club. Under the Supplemental Declaration, appellees are required to be members of the Club and to pay monthly membership dues to the Club. If appellees fail to pay the monthly dues, the Club may file a lien against their lot and subsequently foreclose on that lien to collect the unpaid dues.

At the time appellees purchased their lot, there were no by-laws in existence for the Club, but by-laws were adopted by the Club in the summer of 2006,[1] more than eight years after appellees had purchased their lot. Among other things, the by-laws provide that most disputes that cannot be filed in small-claims court and that do not concern dues or charges owed by the Club member must be submitted for binding arbitration.

---

[1]The by-laws were executed during the first week of August 2006, but state that they were deemed effective as of June 1, 2006.

The by-laws state that any controversy, other than nonpayment of dues, charges, and accounts by a member, arising out of, or relating to the by-laws or the rules and regulations, or any member's membership, or a breach, which is not within the jurisdiction of the small-claims court, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its rules.

Appellees amended their petition for declaratory relief on September 10, 2012, which added a new allegation against the Club. Appellees alleged for the first time in the amended petition that the Club was breaching the Supplemental Declaration by allowing non-full golf members to play golf on the course.[2] On September 19, 2012, the Club filed a motion to compel arbitration pursuant to the arbitration provision in the Club's by-laws. The circuit court denied the motion pursuant to the order filed on November 14, 2012, and the Club filed a timely notice of appeal on December 7, 2012.

Our rules of appellate procedure allow for interlocutory appeals from orders denying a motion to compel arbitration. Ark. R. App. P.–Civ. 2(a)(12) (2012). We review the denial of a motion to compel arbitration de novo on the record. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, __ S.W.3d __; *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005); *Advocat, Inc. v. Heide*, 2010 Ark. App. 825, 378 S.W.3d 779. The appellate court decides the issues on appeal using the record developed in the circuit court without

---

[2]The Club claims that this is a matter involving appellees' membership and should be decided by arbitration just as the other issues raised in the petition should be decided by arbitration—and that appellees should not be allowed to raise new allegations against the Club without it being allowed to at least assert its right to arbitrate the issues.

SLIP OPINION

SLIP OPINION

deference to the circuit court's ruling. *Wyatt v. Giles*, 95 Ark. App. 204, 235 S.W.3d 552 (2006). We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, the circuit court's decision will be accepted as correct on appeal. *Heide*, *supra*. For purposes of clarity, we will address the Club's points in a different order from that presented.

I. *Agreement to Arbitrate Between the Parties*

Arbitration is strongly favored in Arkansas as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Hot Spring Cnty. Med. Ctr. v. Ark. Radiology Affiliates, P.A.*, 103 Ark. App. 252, 288 S.W.3d 676 (2008). Any doubts and ambiguities must be resolved in favor of arbitration. *Id.*

Arkansas statutes concerning arbitration make it plain that a clear agreement to submit to arbitration is essential:

> (a) This subchapter governs *an agreement to arbitrate* made on or after the effective date of this subchapter.
>
> (b) This subchapter governs *an agreement to arbitrate* made before the effective date of this subchapter if all the parties to the agreement or to the arbitration proceeding so agree in a record.

Ark. Code Ann. § 16–108–203 (Supp. 2011) (emphasis added). The court shall decide whether *an agreement to arbitrate* exists or a controversy is subject to *an agreement to arbitrate*. Ark. Code Ann. § 16–108–206(b) (Supp. 2011) (emphasis added). Additionally,

> [o]n motion of a person, *showing an agreement to arbitrate* and alleging another person's refusal to arbitrate pursuant to the agreement: . . . (2) If the refusing party opposes the

4

motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no *enforceable agreement to arbitrate*.

Ark. Code Ann. § 16-108-207(a) (Supp. 2011) (emphasis added).

Arbitration is a matter of contract between the parties. *Hot Spring Cnty. Med. Ctr.*, *supra*. The question of whether a lawsuit should be submitted to arbitration is a matter of contract construction. *Id*. The elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Sumner*, *supra*.

It is undisputed that the parties in this case are competent. We hold that the subject matter is clear from the arbitration provision in the by-laws, the contract signed by appellees, the Supplemental Declaration, and additional documents such as an Addendum to the original contract signed by appellees and a representative for the Club and a 2007 Membership Change of Status Request document signed by Mr. Dye in which the by-laws were acknowledged. The consideration of appellees is the payment of dues and the purchase of the lot, and the consideration on the part of the Club is allowing appellees to use the Club —through their membership—and the sale of the lot. There is a mutual obligation because both sides must arbitrate all controversies other than collection cases and small claims, with both parties treated the same under the arbitration provision. *See Hamilton v. Ford Motor Credit Co.*, 99 Ark. App. 124, 257 S.W.3d 566 (2007).

We also hold that there is mutual agreement, with both parties assenting to the agreement and having a meeting of the minds when the objective indicators are reviewed. *See Sumner*, *supra*. Appellees signed an agreement that their membership and obligation to

5

pay dues would be subject to the by-laws, if any. After by-laws were adopted in 2006, appellees continued to pay their dues and continued to be members of the Club, as they still are today. Also, in 2007, Mr. Dye signed a Membership Change of Status Request document with the Club in which he acknowledged the by-laws of the Club and agreed to pay certain fees in accordance with the by-laws.

Amended terms to a contract, here the arbitration provisions, can be enforced when there is notice. *Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002). The objective evidence in this case indicates that appellees knew of the by-laws as evidenced by the fact that Mr. Dye signed a document in 2007 agreeing to pay certain fees in accordance with the by-laws. By continuing to be members of the Club, appellees assented to the terms of the by-laws, which they originally agreed to do when they signed the contract upon buying their lot in the subdivision. Appellees both stated in discovery responses that they had read the by-laws, but they subsequently recanted those responses. Madison Pope, general manager of the Club, testified that the by-laws are on the Club's website, and that it is the practice of the Club to notify new members of the by-laws. Because the objective evidence points to appellees' assent to the by-laws and the arbitration provision contained therein, we hold that all the elements of a contract have been met, and the parties entered into an agreement to arbitrate the disputes raised in the amended petition for declaratory judgment.

II. *Interstate Commerce and Application of the FAA*

Our supreme court has held that the FAA applies if a transaction involves interstate commerce even if the parties did not contemplate an interstate-commerce connection. *Pest*

6

*Mgmt., Inc. v. Langer*, 369 Ark. 52, 250 S.W.3d 550 (2007); *see also Chenal Restoration Contractors, LLC v. Carroll*, 2011 Ark. App. 291. In the present case, the developer of the Club sold lots all across the country, and the Club has both in-state and out-of-state members. Although the Club notes that appellees were paying personal property taxes in Texas when they bought their lot and that their driver's licenses were still from Texas, we do not find that evidence to be determinative. More significant is that one benefit of being a member of the Club is the ability to play other ClubCorp courses nationwide.

Appellees cite *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004), in which our supreme court commented that the applicability of the FAA only becomes an issue if a determination is made that the arbitration agreement is valid and enforceable. *Id*. The threshold requirement to determine applicability of the FAA is found in 9 U.S.C., sec. 2:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.

Appellees argue that the FAA does not apply because this case involves an Arkansas lot, an Arkansas seller, an Arkansas buyer, a contract signed in Arkansas, and by-laws adopted solely by the Club in Arkansas at a time when an agreement to arbitrate in this state had to be in writing. *See former* Ark. Code Ann. § 16-108-201 (Repl. 2006), repealed by Act 695 of 2011, which requires a "written agreement" to arbitrate.

Appellees attempt to distinguish *Langer, supra*, noting that there was a contract signed by both parties, and the contract contained a written arbitration agreement stating that it

7

SLIP OPINION

would be governed by the FAA. *Langer, supra.* They also challenge appellant's reliance on *Tinder, supra*, noting that the case dealt with a specific arbitration clause contained in a pamphlet released by the employer a year later and applied specifically to an at-will employee situation in Wisconsin.

Based on *Langer, supra*, and *Carroll, supra*, we hold that the FAA applies. The Club's sale of lots to both in-state and out-of-state members and the continuing membership benefit of the ability to play other ClubCorp courses nationwide is sufficient to trigger the application of the FAA in this case.

### III. *Waiver of Right to Compel Arbitration*

As stated in *Heide, supra*, we review the denial of a motion to compel arbitration de novo on the record. Although we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, the circuit court's decision will be accepted as correct on appeal. *Id.*

Our supreme court recently reiterated that when a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties, and if there is, (2) whether the dispute falls within the scope of the agreement. *Legalzoom.com, Inc. v. McIllwain*, 2013 Ark. 370, __ S.W.3d __, (citing *TETRA Techs, Inc., supra*). Because we have determined that there is a valid agreement between the parties, we now analyze the three factors a court must consider when determining whether a party has waived its right to arbitration: (1) the length of the litigation, (2) the party availing itself of the opportunity to litigate, and (3) the prejudice to

8

the opposing party. *Heide, supra.* Under the specific facts of this case, we hold that the circuit court did not err in finding that the Club waived its right to compel arbitration under its agreement with appellees.

The Club filed its motion to compel arbitration approximately seven months after the appellees had filed their original petition for declaratory judgment. The motion was filed in conjunction with a response to the amended petition for declaratory judgment. The Club asserts that, in this case, seven months is not too long of a period before filing a motion to compel arbitration. The parties had not begun merit discovery, only class discovery, and the Club's motion was filed with a response to an amended pleading that raised new allegations and claims against the Club.

Additionally, the Club submits that appellees have not been prejudiced by the filing of the motion to compel arbitration seven months after the beginning of the litigation, noting that Mr. Dye expressly testified that he had not been harmed by the motion to compel being filed in September 2012. It is undisputed that appellees want to continue to be members of the Club and to pay their dues. Lastly, the contract signed by appellees was not in the Club's file but was found through discovery, and only after it had been discovered was the motion to compel arbitration filed. For these reasons, the Club claims that it did not waive its right to compel arbitration.

The evidence before us indicates that during the seven-and-a-half months after appellees had filed their original case on February 3, 2012, but before the Club first raised the issue of arbitration on September 19, 2012, the Club filed a motion to dismiss, a motion for

recusal, two "withdrawals," a motion for continuance, as well as responses to several motions filed by appellees. A hearing was held on May 10, 2012, before Judge Arnold, at which rulings on many, if not all, of these motions were obtained.

In *Heide*, this court noted that

> [o]ther courts have found waiver when a defendant has taken affirmative steps in an action involving a claim which was allegedly covered by an arbitration agreement. Determining whether a waiver has occurred requires a factually specific inquiry and is "not susceptible to bright line rules." Generally, "waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's litigation results in prejudice to the opposing party."

*Heide*, 2010 Ark. App. 825, at 6, 378 S.W.3d at 783–84 (citations omitted). In the present case, the Club made use of the circuit court to decide motions, raise various defenses and arguments, and participate in a hearing. Appellees indicate that they were forced to spend a great deal of attorney time and expense in the preparation of pleadings and responses, as well as being present at the hearing. In *Heide*, the time period involved between initial pleading and raising of the arbitration issue was only three months, versus seven months here, and there is no evidence that the matter involved extensive motions as here, or that any hearings were held. *Id*. The analysis in *Heide* on the extent of the proceedings in circuit court, as well as the expense of time and/or money incurred in that venue, supports the circuit court's denial of the Club's motion to compel arbitration in the instant case. Under our standard of review, we hold that the circuit court did not err in its determination that the Club waived its right to raise the arbitration defense due to unnecessary delay, prejudice

10

to appellees, and failure to raise the arbitration issue earlier in the prior hearing on the Club's motion to dismiss.

Affirmed.

PITTMAN J., agrees.

WOOD, J., concurs.

**RHONDA K. WOOD, Judge, concurring.** I join the majority opinion without reservation. I write separately to further emphasize the fact-specific nature of our decision affirming the circuit court's decision that the appellant had waived the right to enforce the arbitration agreement.

As the majority decision explains, we review the denial of a motion to compel arbitration de novo on the record. *Advocat, Inc. v. Heide*, 2010 Ark. App. 825, 378 S.W.3d 779. This court, in *Heide*, adopted a three-factor test for determining whether a party waived its right to arbitrate. *Id.* (citing 2 David Newbern & John Watkins, *Ark. Civil Prac. & Proc.* § 14:14 (5th ed.)).

It is well-settled law that even utilizing a de novo standard of review, the reviewing court will not reverse absent a showing that the circuit court erred. *Clemenson v. Rebsamen*, 205 Ark. 123, 168 S.W.2d 195 (1943). In the present case, the circuit court, having the front-row seat to the litigation, determined that the appellant had waived its right to enforce the arbitration agreement based on the appropriate legal factors. No one is in a better position than the circuit court to determine the length of time the litigation has been on-going, the extent to which the party seeking to enforce the arbitration agreement availed itself to

11

participate in the litigation, and whether the delay in exercising the right to arbitrate prejudiced the opposing party.

Our affirmation of the circuit court's opinion does not draw a line in the sand that seven months will always be too long to assert a right to enforce an agreement to arbitrate a claim. The particulars of each case matter, and clearly the appellant's participation in discovery, filing of motions, responding to motions, and participation in hearings over seven months were sufficient for us to find that the circuit court did not err in its application of the factors announced in *Heide*.

*McMillan, McCorkle, Curry & Bennington, LLP*, by: *Philip McCorkle*, for appellant.

*Terry P. Diggs, Lawyer, P.A.*, by: *Terry P. Diggs*, for appellee.