SLIP OPINION

Cite as 2015 Ark. 291

# SUPREME COURT OF ARKANSAS

No. CV-15-19

| | |
|---|---|
| DAN BILLINGSLEY, BRENDA BILLINGSLEY, AND FLOORS AND MORE, INC.<br>APPELLANTS<br><br>V.<br><br>BENTON NWA PROPERTIES, LLC<br>APPELLEE | **Opinion Delivered** June 25, 2015<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. CV 2009-1214-2]<br><br>HONORABLE JOHNNY R. LINEBERGER, CIRCUIT JUDGE BY ASSIGNMENT<br><br>REVERSED AND REMANDED. |

**ROBIN F. WYNNE, Associate Justice**

Dan Billingsley, Brenda Billingsley, and Floors and More, Inc., appeal from the Saline County Circuit Court's grant of Benton NWA Properties, LLC's, motion to enforce a settlement agreement between the parties. As this appeal is subsequent to one decided by this court, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(7) (2014). We reverse and remand.

The Billingsleys own twenty acres of land between Interstate 30 and Arkansas State Highway 5 on the west bank of Hurricane Creek in Saline County. Floors and More, Inc., operates a retail flooring business on the property. Appellee owns an interest in a tract of land on the east bank of Hurricane Creek, directly across from the Billingsley property. In a second amended complaint filed on September 20, 2010, appellants alleged that past and present owners of the east-bank property placed, or caused to be placed, fill material in the

floodway and floodplain of Hurricane Creek beginning in 2001. They further alleged that, since that time, they had experienced an increased frequency and extent of flooding on their property. According to appellants, as a result of a flood in 2008, the Billingsleys sustained approximately $500,000 in damage to their property, and Floors and More, Inc., sustained a $600,000 loss of inventory, equipment, fixtures, and other improvements. Appellants asserted several causes of action against appellee that they alleged resulted in a diminution in the value of their property in the amount of $2,500,000. Appellee moved for summary judgment in March 2011, arguing that the statute of limitations on the claims ran in 2009 and that the Billingsleys could not satisfy the elements of any cause of action against it. The circuit court denied the motion for summary judgment in an order entered on June 28, 2011, finding that there were genuine issues of material fact as to whether any or all of the fill placed on the east–bank property justified granting any or all of the relief claimed by appellants.

In February 2013, just before trial was set to commence, the parties reported to the trial court that they had reached a settlement. The following terms were read into the record: (1) Benton NWA would pay appellants $200,000 in three installments, with the first due thirty days after the signing of the settlement agreement and the remaining installments to be paid on the same date in two successive years; (2) Benton NWA would not contest applications by appellants to place fill on their property in the future; (3) appellants would dismiss their claims against Benton NWA with prejudice upon the signing of a settlement agreement; (4) a proposed revision of the floodway and floodplain by appellants either would not be submitted to the Federal Emergency Management Administration or would be

withdrawn; and (5) the settlement agreement would have mutual general releases.

On February 14, 2013, counsel for appellee emailed a proposed settlement agreement to counsel for appellants. The proposed settlement contained the following paragraph:

> **5. Release.** For and in consideration of the recitals set forth above, the payment described in Paragraph 1 above, the covenant described in Paragraph 2 above, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Billingsleys release, acquit, and forever discharge Benton NWA Properties, LLC, in addition to its directors, officers, employees, agents, representatives, subsidiaries, divisions, members, affiliates, shareholders, legal representatives, predecessors, successors, insurers, attorneys, trustees, assigns, successors-in-interest, and privies, from any and all claims, causes of action, debts, suits, proceedings, agreements, contracts, judgments, damages, obligations, costs, fees (including, without limitation, attorney's fees), responsibilities, liabilities, and remedies (including, without limitation, claims for injunctive or equitable relief), whether known or unknown, which the Billingsleys have ever had, presently have, or may have in the future against Benton NWA Properties, LLC, or its directors, officers, employees, agents, representatives, subsidiaries, divisions, members, affiliates, shareholders, legal representatives, predecessors, successors, insurers, attorneys, trustees, assigns, successors-in-interest, and privies, directly or indirectly arising from or related to (i) the facts, circumstances, and allegations set forth in the Action or (ii) fill placed on the East Bank Property prior to the date of the last signature below or (iii) the condition of the East Bank property as it exists on the date of the last signature below or (iv) damages caused by the condition of the East Bank Property as it exists as of the date of the last signature below, IT BEING INTENDED THAT THE BILLINGSLEYS RELEASE ALL CLAIMS OF ANY KIND THAT THEY MIGHT HAVE AGAINST BENTON NWA PROPERTIES, LLC AND ITS SUCCESSORS-IN-INTEREST <u>THAT ARISE FROM CONDITIONS ON THE EAST BANK PROPERTY AS OF THE DATE OF THE LAST SIGNATURE BELOW</u>, WHETHER ASSERTED OR CONTEMPLATED IN THE ACTION OR NOT.

(Emphasis in original.) Counsel for appellants objected via email to the inclusion in the release of claims the Billingsleys "may have in the future." Counsel for appellee suggested changes to clarify that the Billingsleys were not releasing claims based on future acts. Appellants' counsel then requested that the release apply "with respect to any and all damages

resulting from flooding and the consequences of flooding that have occurred as of the date of this Agreement." Appellee's counsel responded by insisting that the agreement be broad enough to cover any future flood events allegedly resulting from current conditions on the east-bank property. Finally, appellants' counsel asserted that appellants did not agree to release any claims for future flooding and that they agreed to release claims for all damages from past floods.

On March 11, 2013, appellee filed a motion to enforce settlement agreement. Appellee noted in the motion that the parties had agreed to a settlement with the exception of the disagreement over the scope of the release. Appellee asserted that, by agreeing to a general dismissal of their claims with prejudice and without an exception for claims allegedly incurred after the settlement agreement, appellants released any claims for damages or equitable relief based on current property conditions. In response, appellants filed a countermotion to enforce settlement in which they asserted that, because the "law of the case" was that the obstruction of the waterway was partial, successive actions may be instituted to compensate the injuries as they occur and they should not be required to release claims for future damages arising out of the conditions on the east-bank property.

On April 19, 2013, the circuit court entered an order in which it found that the settlement agreement between the parties effected a release by appellants of all claims against appellee and its successors in interest based on the current conditions on the east bank of the creek. The order included a Rule 54(b) certificate. Appellants appealed. In a subsequent order, the circuit court stated that it had found in the April 19, 2013 order that the settlement

SLIP OPINION

agreement and release submitted by appellee encompassed the terms actually agreed on by the parties. This court dismissed the appeal, finding that the Rule 54(b) certificate was insufficient. *Billingsley v. Benton NWA Props., LLC*, 2014 Ark. 65. Following the dismissal of the appeal, the circuit court entered a judgment in which it stated that all claims for relief between the parties had been adjudicated and ordered appellants to sign the settlement agreement. This appeal followed.

Although they frame the ultimate issue as one of law, appellants essentially argue on appeal that the circuit court erred in interpreting the settlement agreement, specifically the scope of the release to be executed by the parties as part of the settlement. Because it is clear from the record that there was no agreement between the parties as to the scope of the release, the circuit court's conclusion that the release submitted by appellee was a term of the settlement actually agreed upon by the parties, and its subsequent grant of appellee's motion to enforce settlement, were in error.

Courts will enforce contracts of settlement if they are not in contravention of law. *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978). The essential elements of a contract include (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003). We keep in mind two legal principles in determining whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Alltel Corp. v.*

*Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). Whether or not there is a meeting of the minds is an issue of fact, and we do not reverse a circuit court's fact-finding unless it is clearly erroneous. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 266 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*.

Here, both parties admit that there was no agreement between them as to the scope of the release agreement. The email correspondence between them shows that their views on the scope of the release have been diametrically opposed from the outset. Indeed, they continue on appeal to insist that the other, by virtue of simply having agreed to settle the case, automatically assented to their favored release terms. Instead of resolving this disagreement and, in the process, reaching an actual settlement of the dispute, the parties submitted competing motions to enforce a settlement to the circuit court. The circuit court then concluded that the release favored by appellee was the one that had been agreed on by the parties. The complete lack of evidence in the record that this is the case compels the conclusion that this determination by the circuit court is clearly erroneous. Because this conclusion is in error, the orders of the circuit court enforcing a settlement that includes the release terms submitted by appellee cannot be allowed to stand. The orders of the circuit court entered for the purpose of enforcing settlement between the parties are hereby reversed and the case is remanded to the circuit court for further proceedings.

Reversed and remanded.

*Richard Mays Law Firm, PLLC*, by: *Richard H. Mays*, for appellants.
*Quattlebaum, Grooms & Tull PLLC*, by: *E.B. Chiles IV* and *Sarah Keith-Bolden*, for appellee.