

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-517

THE MADISON COMPANIES, LLC,
AND HORSEPOWER
ENTERTAINMENT, LLC
                                    APPELLANTS

V.

GRANT WILLIAMS
                                    APPELLEE

**Opinion Delivered** December 14, 2016

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
TWELFTH DIVISION
[NO. 60CV-15-2799]

HONORABLE ALICE S. GRAY,
JUDGE

AFFIRMED

---

## RITA W. GRUBER, Judge

The issue in this interlocutory appeal is whether an arbitration agreement exists between appellee, Grant Williams, and appellants, The Madison Companies, LLC, and Horsepower Entertainment, LLC (a wholly owned subsidiary of The Madison Companies, LLC). The Pulaski County Circuit Court entered an order finding that an arbitration agreement did not exist between the parties. Appellants appeal from the court's order, arguing that there is a valid, enforceable arbitration agreement, that Mr. Williams's claims against appellants fall within the agreement, and that they have the right to enforce the agreement. We affirm the circuit court's order.

On February 14, 2015, Mr. Williams purchased tickets online for an outdoor music festival, Thunder on the Mountain, to be held June 26–28, 2015, on Mulberry Mountain near Ozark, Arkansas. Although the parties dispute appellants' precise role in organizing and

promoting the festival, Mr. Williams alleged in his complaint that Pipeline Productions, Inc. ("Pipeline"), and Backwood Enterprises, LLC (together, the "Pipeline Defendants"), and appellants jointly organized and promoted the festival. According to Mr. Williams, the Pipeline Defendants had a dispute with appellants about funding after tickets had already been sold, but the joint group continued to promote and sell festival tickets. Finally, on June 12, 2015, Pipeline notified Mr. Williams and other ticket holders that Thunder on the Mountain had been canceled and that Pipeline would refund ticket holders' money within 90 days.

On June 22, 2015, Mr. Williams filed a complaint on behalf of himself and a class of similarly situated persons against the Pipeline Defendants and appellants.[1] Mr. Williams alleged that he had purchased tickets to Thunder on the Mountain from appellants and the Pipeline Defendants. He claimed that they had hidden the funding issues from him and other ticket purchasers, continuing to sell tickets with the knowledge that the festival was at great risk of being canceled. Thus, he alleged, he and others continued purchasing tickets, making hotel and other accommodation plans, and incurring substantial damages. Mr. Williams alleged that the Pipeline Defendants and appellants had violated the Arkansas Deceptive Trade Practices Act and that their acts were deceptive, unfair, unconscionable, and misleading.

Appellants filed a motion to compel arbitration on December 18, 2015. They did not produce either a contract or arbitration agreement between themselves and Mr. Williams.

---

[1]The Pipeline Defendants are not parties to this appeal.

2

SLIP OPINION

Rather, they produced an arbitration agreement from the website of Front Gate Tickets ("Front Gate"), the conduit through which all online tickets to the festival had allegedly been sold. They also attached the affidavit of David R. Lionette, a senior vice president for asset management with The Madison Companies, LLC.

In his affidavit, Mr. Lionette stated that his duties included overseeing and managing this litigation against appellants. He said that he had accessed the Front Gate Tickets Thunder on the Mountain Festival website through a Google search, where he "clicked on" a "terms of use" link and was transferred to a webpage containing Front Gate's terms of use and terms of sale. He stated that the terms included a binding arbitration agreement. He attached a screenshot of the terms of use and terms of sale, including the arbitration agreement, to his affidavit. He then stated that, although he could not purchase tickets for the Thunder on the Mountain Festival because his search was performed months after the show had been canceled, he visited the main Front Gate Tickets' website and accessed four other events for which he could purchase tickets. He stated that there was a prominent hyperlink for Front Gate's terms of use at the bottom of each website for the four events. He stated that the terms of use for each event were identical and that all included arbitration agreements. According to his affidavit, in Mr. Lionette's experience, each event's website had an identical checkout procedure for the purchase of tickets. He attached screenshots of each checkout screen. He stated that a consumer could not execute a purchase until he or she affirmatively agreed to the terms of sale. He said that there was a hyperlink on the "terms of sale" language and that by clicking on the link, a consumer could view the entire terms of sale, including

an arbitration agreement. He claimed that, based on his review of these websites, the arbitration agreement for each of the four events' websites was identical to the arbitration agreement for Thunder on the Mountain Festival.

Using Mr. Lionette's affidavit and attached screenshots and Mr. Williams's ticket, or print pass, which included the Front Gate Tickets logo on the bottom, appellants argued in their motion that there was clearly a valid and binding arbitration agreement between Front Gate and Mr. Williams; that language in the agreement extended the agreement to other parties; and that Mr. Williams was equitably estopped from refusing to arbitrate with appellants because he was seeking to enforce claims directly related to the contract.

At the hearing on the motion, the circuit court expressed doubt that appellants could prove the existence of an arbitration agreement between them and Mr. Williams by producing an arbitration agreement they had obtained online between Front Gate and another purchaser for another event. Appellants argued that Mr. Williams's assent to an arbitration agreement with Front Gate could be inferred from Mr. Lionette's affidavit regarding Front Gate's procedures and processes for other events. Mr. Williams objected to Mr. Lionette's affidavit for lack of personal knowledge and proper authentication regarding Front Gate's website and operations. The court then recognized two concerns: first, the affidavit was from an employee of a party rather than Front Gate and, second, there was nothing in the record to reflect that what the employee saw on Front Gate's website was in place when Mr. Williams purchased his tickets ten months earlier. The court's order, entered on February 17, 2016, denying appellants' motion to compel arbitration "in all respects"

SLIP OPINION

stated the following: "The Court does not find that an arbitration agreement exists between [Mr. Williams] and [appellants]."

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civil 2(a)(12) (2016). We review a circuit court's order denying a motion to compel arbitration de novo on the record. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 5, 424 S.W.3d 304, 307. We decide the issues on appeal using the record developed in the circuit court without deference to the circuit court's ruling. *Wyatt v. Giles*, 95 Ark. App. 204, 205, 235 S.W.3d 552, 554 (2006). We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Diamante v. Dye*, 2013 Ark. App. 630, at 4, 430 S.W.3d 196, 199. Further, we recognize that arbitration is strongly favored in Arkansas. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 6, 485 S.W.3d 669, 673.

When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) Is there a valid agreement to arbitrate between the parties? and (2) If such an agreement exists, does the dispute fall within its scope? *LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, at 8–9, 429 S.W.3d 261, 265. A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice of the terms and subsequent assent. *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005). We keep in mind two legal principles when deciding whether the parties to an arbitration agreement entered into a valid contract: (1) a court cannot make a contract for the parties but

5

can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 98, 60 S.W.3d 428, 434 (2001). Both parties must manifest assent to the particular terms of the contract. *Alltel Corp*, 360 Ark. at 576, 203 S.W.3d at 80. For a party to assent to a contract, the terms of the contract, including an arbitration agreement, must have been effectively communicated. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, at 8, 437 S.W.3d 119, 123; *see also Alltel Corp.*, *supra*. Finally, a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

We turn now to the threshold inquiry—that is, whether an agreement to arbitrate between the parties exists. Appellants argue that they provided sufficient proof of an agreement to arbitrate between Front Gate Tickets and Mr. Williams. Their proof was comprised of Mr. Lionette's affidavit and attached screenshots from Front Gate Tickets' website. While Mr. Williams admitted that he had purchased his ticket online and his print pass contained the logo for Front Gate Tickets on the bottom of the ticket, he did not admit that he had agreed to any particular contract terms, and he specifically denied that he had agreed to the arbitration provision attached to Mr. Lionette's affidavit.

Appellants argue that "clickwrap agreements" pursuant to which a consumer must accept certain terms and conditions in order to purchase an item online have been upheld as valid and enforceable. And we have reviewed the case cited by appellants in support of

6

their argument. *See, e.g., Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*, 12-CV-6125, 2014 WL 3672128 (W.D. Ark. July 23, 2014) (finding arbitration provision valid in case between parties to the actual agreement). Appellants have not provided any case law on all fours with the facts in this case, however. They do not allege that they have entered into an arbitration agreement with Mr. Williams, nor do they allege that they are in any manner affiliated with Front Gate Tickets. Indeed, they have alleged that they had "absolutely nothing to do with the promotion, sales, or marketing of tickets to Thunder Mountain Festival" and merely loaned money to Pipeline. They attempt to prove Front Gate's operations, procedures, and processes by their own employee's affidavit. This employee was a vice president in asset management in charge of this litigation for appellants who conducted internet searches on Front Gate's website for events unrelated to Thunder on the Mountain. And, with no evidence provided by Front Gate Tickets and without being a party to any agreement, appellants attempt to argue that an arbitration agreement allegedly entered into by Mr. Williams and Front Gate Tickets was specifically intended to apply to appellants.

We hold that this is simply not sufficient to prove that an arbitration agreement was effectively communicated to Mr. Williams or that he assented to its terms. Screenshots obtained by the employee of a party unconnected with Front Gate ten months after Mr. Williams purchased his ticket are not sufficiently specific to demonstrate effective communication of Front Gate's arbitration agreement to Mr. Williams. Although Mr. Williams's print pass does contain a reference to Pipeline's terms of use—specifically stating

7

that it is "subject to Pipeline Ticketing's Terms of Use, Terms of Ticket Sales and Terms of PrintPass Sales, each available at www.pipelineproductions.com"—it does not refer to terms of use for Front Gate. A Front Gate Tickets logo appears on the bottom of the ticket, but there is no other information regarding Front Gate.

Because the additional issues argued by appellants presume the existence of a contract requiring arbitration, we need not address those issues. *See Alltel Corp.*, 360 Ark. at 579, 203 S.W.3d at 81–82.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Wright, Lindsey & Jennings,* LLP, by: *Scott A. Irby* and *Michael A. Thompson* and Brownstein *Hyatt Farber Schreck, LLP*, by: *Richard B. Benenson, pro hac vice*, for appellants.

*Steel, Wright & Colllier, PLLC*, by: *Nate Steel*, *Alex T. Gray*, and *Scott Poynter*, of counsel, for appellee.