Cite as 2024 Ark. App. 563

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-404

| | |
|---|---|
| HICKORY HEIGHTS HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON | Opinion Delivered November 13, 2024 |
| APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-22-2068] |
| V. | HONORABLE LATONYA HONORABLE, JUDGE |
| YASHIKA WATSON, AS GUARDIAN OF THE PERSON AND ESTATE OF ZEOLA ELLIS III | |
| APPELLEES | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

This is an interlocutory appeal by Appellants, Hickory Heights Health and Rehab, LLC (HHHR); Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton (herein collectively referred to as Hickory Heights), from the decision of the Pulaski County Circuit Court finding that the arbitration agreement entered into by the appellee, Yashika Watson, as guardian of the person and estate for her father, Zeola Ellis III, was void because it violated federal regulations and was unenforceable. Hickory Heights' sole issue on appeal is that the circuit court's denial of its motion to compel arbitration was erroneous. We disagree and affirm.

On or about February 17, 2021, Yashika Watson, as guardian of the person and estate of her father, Zeola Ellis III, executed an arbitration agreement that was conditioned on admission of her father to HHHR. Included in the documentation signed by Ms. Watson was an admission agreement and an incorporated arbitration agreement. By signing the arbitration agreement, the parties agreed to waive their right to litigate their claims in a court of law before a judge and jury and instead agreed to submit such claims to binding arbitration. The arbitration agreement specifically included claims for negligence and malpractice and claims based on contract or statute.

On March 31, 2022, Watson initiated an action against Hickory Heights alleging causes of action for negligence, medical malpractice, breach of the admission agreement, and violation of the Deceptive Trade Practices Act. Watson alleged that Hickory Heights had breached its duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse, and neglect of Zeola Ellis, who was injured because of the lack of care and treatment he received at HHHR.

Hickory Heights filed a timely answer on May 17 denying Watson's claims and asserting the existence of an arbitration agreement as a defense. Hickory Heights filed its motion to compel arbitration and brief in support on May 25, asserting that all claims brought by Watson were governed by and subject to a valid and enforceable agreement to arbitrate contained within the admission agreement. Watson filed her response on June 3 alleging that the arbitration agreement was in violation of federal regulations prohibiting a long-term care (LTC) facility to require the signing of an arbitration agreement as a condition

of admission to the facility, is against public policy, and is unenforceable because it is unconscionable. In its motion to compel arbitration hearing, Hickory Heights introduced the arbitration agreement. Section six of the agreement provided, "Signing this arbitration agreement, as a part of the admission agreement, is a condition of admission."

A hearing on Hickory Heights' motion to compel arbitration was held on February 10, 2023. Watson argued the provisions of 42 C.F.R. § 483.70(n)(1) (2024), which was in effect when the arbitration agreement was executed, showed the arbitration agreement was illegal in violation of federal regulations and was against public policy as stated by the Centers for Medicare and Medicaid Services (CMS). Watson stated that the regulation was in effect two years prior to her signing the arbitration agreement. The circuit court found that "arbitration agreements that are a condition of admission are unlawful" and that "because the arbitration agreement violates a federal regulation, it is illegal and unenforceable." On February 17 the circuit court entered its order denying the motion to compel arbitration, finding that the arbitration agreement was unenforceable because it violated federal regulations and was unconscionable. Hickory Heights filed a timely notice of appeal on March 17, 2023.

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); *Madison Cos., LLC v. Williams*, 2016 Ark. App. 610, 508 S.W.3d 901. We review a circuit court's order denying a motion to compel arbitration de novo on the record. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 5, 424 S.W.3d 304, 307. We decide the issues on appeal using the record developed in the circuit court without

3

deference to the circuit court's ruling. *Wyatt v. Giles*, 95 Ark. App. 204, 205, 235 S.W.3d 552, 554 (2006). We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Diamante v. Dye*, 2013 Ark. App. 630, at 4, 430 S.W.3d 196, 199. Further, we recognize that arbitration is strongly favored in Arkansas. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669. Even under that standard, we do not reverse absent a showing by an appellant that the circuit court erred. *Diamante, supra.*

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), which expressly governs the arbitration agreement at issue in this case, requires the application of "federal substantive law regarding arbitration" in state courts. *Courtyard Gardens, supra.* Included within that substantive law is a "liberal federal policy favoring arbitration" that mirrors Arkansas's own policy. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). To serve that policy, the FAA requires courts to "rigorously enforce agreements to arbitrate" according to their terms. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Westlake Servs., LLC v. England*, 2024 Ark. App. 271, 689 S.W.3d 664 (class action based on the Automobile Dealer's Anti-Coercion Act). When presented with a valid arbitration agreement, the court should compel claims within the scope of the agreement to arbitration "as quickly and easily as possible." *Am. Ins. Co. v. Cazort*, 316 Ark. 314, 320, 871 S.W.2d 575, 578 (1994). Arbitration agreements are governed by the (FAA, which makes them "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of

4

any contract." *Jorja Trading, v. Willis*, 2020 Ark. 133, at 3, 598 S.W.3d 1, 4 (quoting 9 U.S.C. § 3). "The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," and "any doubts and ambiguities will be resolved in favor of arbitration." *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116, at 6, 661 S.W.3d 699, 704.

The question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *May Constr. Co., Inc. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). We have long recognized that the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Cash in a Flash Check Advance of Ark., LLC v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002). This court reviews a trial court's order denying a motion to compel arbitration de novo on the record. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004). Even if an arbitration agreement exists and the dispute falls within the scope of the agreement, a court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *BDO Seidman, LLP v. SSW Holding Co., Inc.*, 2012 Ark. 1, at 13, 386 S.W.3d 361, 370 (quoting Federal Arbitration Act 9 U.S.C. § 2). "This permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'" *Id.*, 386 S.W.3d at 370 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517

5

U.S. 681, 687 (1996)); BHC *Pinnacle Point Hosp., LLC v. Nelson*, 2020 Ark. 70, 594 S.W.3d 62.

Hickory Heights argues the court erred when it did not compel arbitration because the admission and arbitration agreements signed by Watson satisfy the five elements of a valid contract pursuant to the requirements of the FAA. Watson countered with the argument that the arbitration agreement is in violation of federal regulations that specifically prohibit LTC facilities from requiring applicants or current residents from being required to sign an arbitration agreement conditioned on admission to the facility or to continue to receive care at the facility, and the arbitration agreement is void and unenforceable.

In 2019, the Centers for Medicare and Medicaid Services (CMS) published the final version of the rule (Revised Rule) in the Federal Register, to go into effect on September 16, 2019, regarding LTC facilities imposing a requirement that for admission to the facility, the applicant must sign a binding arbitration agreement. Revision of Requirements for Long-Term Care Facilities: Arbitration Agreements, 84 Fed. Reg. 34,718, 34,718 (July 18, 2019) (codified at 42 C.F.R. § 483.70(n)). The rule provided:

(n) *Binding arbitration agreements.* If a facility chooses to ask a resident or his or her representative to enter into an agreement for binding arbitration, the facility must comply with all of the requirements in this section.

(1) The facility must not require any resident or his or her representative to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility and must explicitly inform the resident or his or her representative of his or her right not to sign the agreement as a condition of admission to, or as a requirement to continue to receive care at, the facility; and,

. . . .

(4) The agreement must explicitly state that neither the resident nor his or her representative is required to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility.

Hickory Heights was one of many plaintiffs in the *Northport* case heard by the Eighth Circuit Court of Appeals contesting the CMS rule prohibiting admission to an LTC facility being predicated on signing an arbitration agreement. *Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Hum. Servs.*, 14 F.4th 856 (8th Cir. 2021). Hickory Heights and other plaintiffs argued in *Northport* that the CMS rule prohibiting LTC facilities from requiring residents to sign arbitration agreements as a condition for admission, 53 C.F.R. § 483.70(n)(1), "restricts the use of arbitration agreements" and violates the FAA. The Eighth Circuit rejected the arguments that that the revised rule contravenes the equal-treatment principle of the FAA because it "singles out" arbitration agreements, including by regulating LTC facilities' ability to enter into them with residents. *Northport* was about CMS's authority to promulgate the regulation at issue and its authority—or lack thereof—pursuant to such a regulation to unilaterally cancel contracts made between two other parties, *i.e.*, LTCs and their residents, which was not the issue before the circuit court and now this court. Moreover, while the Eighth Circuit acknowledged that CMS could not cancel a contract by regulatory fiat, it held that such a contract would remain subject to generally applicable contract defenses, such as fraud, duress, or unconscionability. Our supreme court has held that "[i]llegality of a contract is an affirmative defense." *Jim Halsey Co. v. Bonar*, 284 Ark.

7

461, 472, 683 S.W.2d 898, 905, *opinion supplemented on denial of reh'g*, 284 Ark. 461, 688 S.W.2d 275 (1985).

The circuit court found that "arbitration agreements that are a condition of admission are unlawful" and that "because the arbitration agreement violates a federal regulation, it is illegal and unenforceable." If an arbitration agreement is secured on a violation of a federal regulation, it is irrelevant if the agreement otherwise conforms to the elements of a contract. In reviewing the validity of a rule or regulation, this court must give the regulation the same presumption of validity as it would a statute. *McLane Co., Inc. v. Davis*, 353 Ark. 539, 110 S.W.3d 251 (2003); *Dep't of Hum. Servs. v. Berry*, 297 Ark. 607, 764 S.W.2d 437 (1989). In *Tallman v. Lewis*, 124 Ark. 6, 186 S.W. 296 (1916), the Arkansas Supreme Court cited the holding in *Brooks v. Cooper*, 26 A. 978 (N.J. 1893).

We hold that a valid arbitration agreement does not exist because it is in violation of a federal regulation prohibiting Hickory Heights from requiring an applicant to sign and arbitration agreement as a condition of admission to its facility. We do not address appellants' argument that the case should be remanded to the circuit court to determine if there is a valid arbitration agreement, nor do we address the unconscionability finding of the circuit court as those issues are now moot.

Affirmed.

GRUBER and MURPHY, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

8

*Reddick Law, PLLC*, by: *Matthew D. Swindle* and *Heather G. Zachary*, for appellee.