Cite as 2025 Ark. App. 57

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-23-668

| | |
|---|---|
| BELVEDERE NURSING AND REHABILITATION CENTER, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; AND NURSING CONSULTANTS, INC.<br><br>APPELLANTS<br><br><br>V.<br><br><br>KATHY WARD, THOMAS POE, AND GILFORD POE, AS CO-EXECUTORS OF THE ESTATE OF MARTHA POE, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF MARTHA POE<br><br>APPELLEES | Opinion Delivered February 5, 2025<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-20-989]<br><br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br><br>REVERSED AND REMANDED |

**ROBERT J. GLADWIN, Judge**

This is an appeal from an order of the Garland County Circuit Court denying the motion to compel arbitration filed by appellants Belvedere Nursing and Rehabilitation, Center, LLC; Central Arkansas Nursing Centers, Inc.; and Nursing Consultant, Inc. (collectively referred to herein as "Belvedere"). This is the second appeal of the matter to this court. On April 12, 2023, we reversed and remanded to the circuit court for the court to make findings on the threshold questions before considering any alleged defenses to the arbitration agreement. *See Belvedere Nursing & Rehab. Ctr., LLC v. Ward*, 2023 Ark. App. 208,

665 S.W.3d 265. On remand, the circuit court entered a blanket denial of the motion to compel arbitration.

Belvedere argues on appeal that the circuit court erred in denying its motion to compel despite the existence of a valid and enforceable arbitration agreement and appellee Kathy Ward's failure to establish any valid defense to enforcement of the contract. We reverse and remand for the circuit court to enter an order compelling arbitration.

I. *Background Facts*

On or around June 13, 2019, Martha Poe ("Poe") admitted herself to Belvedere as a resident. Poe executed documents in connection with her admission to the nursing home— namely, an admission agreement that included an arbitration agreement (the "Agreement"), which is at issue in this matter. The Agreement expressly stated as follows in all caps and bold font:

> **THE PARTIES FURTHER ACKNOWLEDGE THAT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY, AND ARE INSTEAD ACCEPTING THE USE OF ARBITRATION.**

Additionally, the Agreement was clear that signing the contract was a condition of admission into Belvedere.

Poe died at the facility on August 30, 2019, and the personal representative of her estate, Kathy Ward ("Ward"), brought a lawsuit against Belvedere on September 1, 2020, for negligence, medical malpractice, breach of the Agreement, and violation of the Arkansas Deceptive Trade Practices Act. Ward alleged that Poe was injured as a result of the care and

2

treatment she received at Belvedere. Belvedere filed its motion to compel arbitration on October 12, 2020, and argued that the claims brought by Ward were governed by, and subject to, a valid and enforceable agreement to arbitrate contained in the Agreement and signed by Poe. Ward's response alleged that the circuit court must deny the motion because the Agreement violated federal law since it required arbitration as a condition of admission and, further, that the condition of admission made the Agreement unconscionable.

The circuit court held a hearing on the motion on April 12, 2021. On September 22, 2021, the court entered an order denying the motion to compel arbitration, stating, "The Arbitration Agreement signed by Plaintiff and Defendant is a condition of admission. For this reason, the Defendant's Motion to Compel Arbitration is DENIED." Belvedere filed a timely notice of appeal on October 20, 2021, and this court subsequently reversed and remanded to the circuit court, holding as follows:

> [T]he court denied the motion to compel because the arbitration agreement was a condition of admission. This finding of the circuit court demonstrates the importance of the threshold questions because it is impossible to determine here—without resorting to speculation—if the court's decision was based on validity or enforceability. Accordingly, pursuant to precedent, we reverse and remand this matter to the circuit court.

*Belvedere Nursing & Rehab. Ctr., LLC*, 2023 Ark. App. 208, at 5, 665 S.W.3d at 267–68.

On remand, the circuit court held a second hearing on the motion to compel arbitration. On June 7, 2023, the court entered an order with a blanket denial of the motion, stating, "The Defendants' motion to compel arbitration is DENIED." Belvedere filed its timely notice of appeal on July 7, 2023; this appeal followed.

## II. *Standard of Review*

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2023). We review a circuit court's denial of a motion to compel arbitration de novo on the record. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669. Arbitration is simply a matter of contract between parties. *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286. Whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles. *Id.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally; thus, we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.* We are also guided by the legal principle that contractual agreements are construed against the drafter. *Id.*

## III. *Discussion*

Belvedere raises the same issue it did in the first appeal: that the circuit court erred in denying its motion to compel arbitration despite the existence of a valid and enforceable arbitration agreement and despite Ward's failure to establish any defense to enforcement of the contract.

The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual

4

obligation.  GGNSC *Holdings, LLC v. Chappel*, 2014 Ark. 545, 453 S.W.3d 645.  Further, the burden of pleading and proving an affirmative defense is on the party asserting it. *See Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46.  Illegality of a contract and unconscionability are affirmative defenses; therefore, it was Ward's burden to prove that these defenses rendered the arbitration agreement unenforceable.  *See Jim Halsey Co., Inc. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985); *see also* GGNSC *Holdings, LLC v. Lamb*, 2016 Ark. 101, 487 S.W.3d 348.

A. Contract Illegality

First, Belvedere argues that the Agreement did not violate federal law; thus, it is not an illegal contract.  We agree.

Medicare and Medicaid provide coverage for long-term residents of nursing homes, commonly referred to as "LTC facilities." Participating LTC facilities must comply with the requirements set forth in 42 U.S.C. § 1395i-3 (Medicare) and 42 U.S.C. § 1396r (Medicaid). In 2015, the Centers for Medicare and Medicaid Services (CMS) initiated notice and comment rulemaking to comprehensively revise the requirements for LTC facilities to participate in the Medicare and Medicaid programs. *See* Reform of Requirements for Long-Term Care Facilities, 80 Fed. Reg. 42168 (proposed July 16, 2015).  Due to concern regarding LTC facilities' use of arbitration agreements, CMS promulgated a rule discouraging nursing homes that participate in Medicare and Medicaid from entering into pre-dispute arbitration agreements with residents.

On October 4, 2016, after an extended comment period, CMS published the final version of the rule ("Original Rule") in the Federal Register. *See* Reform of Requirements for

5

Long-Term Care Facilities, 81 Fed. Reg. 68688 (Oct. 4, 2016). The Original Rule prohibited LTC facilities from entering into pre-dispute arbitration agreements with residents or their representatives. The rule was set to go into effect on November 28, 2016; however, a group of nursing homes in Mississippi sued to permanently enjoin the provision, arguing that the Original Rule's blanket prohibition of LTC facilities' use of pre-dispute arbitration agreements violated the Federal Arbitration Act ("FAA"). *See Am. Health Care Ass'n v. Burwell*, 217 F. Supp. 3d 921 (N.D. Miss. 2016). As a result, the district court granted a nationwide preliminary injunction to the challenged provision of the Original Rule. *Id.* CMS did not appeal the ruling but, instead, started exploring revisions. Thus, the Original Rule never went into effect, and on December 9, 2016, CMS specifically instructed state survey agencies not to enforce the rule. *See* Revision of Requirements for Long-Term Care Facilities: Arbitration Agreements, 84 Fed. Reg. 34718 (July 18, 2019) (codified at 42 C.F.R. § 483).

In 2017, CMS proposed removing the requirement that precluded LTC facilities from entering into pre-dispute arbitration agreements and instead sought to strengthen some requirements to strike "the best policy balance." 82 Fed. Reg. 26649, 26650–51 (proposed June 8, 2017). Two years later, on July 19, 2019, CMS issued its "Revised Rule" that was set to go into effect on September 16, 2019. The Revised Rule states in part as follows:

> (m) *Binding arbitration agreements.* If a facility chooses to ask a resident or his or her representative to enter into an agreement for binding arbitration, the facility must comply with all of the requirements in this section.

(1) The facility must not require any resident or his or her representative to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility and must explicitly inform the resident or his or her representative of his or her right not to sign the agreement as a condition of admission to, or as a requirement to continue to receive care at, the facility.

42 C.F.R. § 483.70(m) (2019). The Revised Rule was promptly challenged in the United States District Court for the Western District of Arkansas. *See Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Hum. Servs.*, 438 F. Supp. 3d 956 (W.D. Ark. 2020). Belvedere is also an appellant in *Northport*. The federal district court issued a stay of enforcement of the Revised Rule as to the parties in *Northport*. On April 7, 2020, the federal district court denied Northport's motion for summary judgment and upheld the Revised Rule. The order was then appealed to the United States Court of Appeals for the Eighth Circuit in *Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Hum. Servs.*, 14 F.4th 856 (8th Cir. 2021).

The Eighth Circuit affirmed the federal district court's decision in *Northport*; however, it explained the effect of the Revised Rule on arbitration agreements in general. The court specifically found that the rule in question "does not invalidate or render unenforceable any arbitration agreement." *Id.* at 868. Rather, the court explained, the rule establishes the conditions for receipt of federal funding through the Medicare and Medicaid programs. *Id.* Specifically, the court held:

[I]f an LTC facility entered into an arbitration agreement with a resident without complying with the Revised Rule by requiring the resident to sign as a condition of admission to the facility, *see* 42 C.F.R. § 483.70(n)(1), the arbitration agreement would nonetheless be enforceable, absent a showing of "generally applicable contract defenses, such as fraud, duress, or unconscionability," [*AT&T Mobility LLC v.*] *Concepcion*, 563 U.S. [333, 339], 131 S. Ct. 1740 [2011]; *see* 9 U.S.C. § 2. CMS would

7

simply enforce the regulation through a combination of administrative remedies, including denial of payment and civil monetary penalties. *See* 42 C.F.R. § 488.406; 84 Fed. Reg. at 34,733.

*Id.* Thus, the court held that the Revised Rule did not conflict with the FAA "[b]ecause [it] does not, in words or effect, render arbitration agreements entered into in violation thereof invalid or unenforceable." *Id.* at 869.

Here, Poe signed the Agreement on June 13, 2019—which was roughly one month before CMS issued the Revised Rule on July 19 and approximately three months before the rule went into effect on September 16. Therefore, because the Revised Rule was not in effect when Poe signed the Agreement, it is not applicable here. Accordingly, we need not address the issue of whether the federal regulation rendered the Agreement invalid or unenforceable.[1]

## B. Unconscionability

Next, Belvedere maintains that the Agreement is not unconscionable. We agree. Our supreme court has stated that, in assessing whether a particular contractual provision is unconscionable, the courts review the totality of the circumstances surrounding the negotiation and execution of the contract. *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005). Two important considerations are whether there is a gross

---

[1]While we acknowledge this court's recent decision in *Hickory Heights Health and Rehab, LLC v. Watson*, 2024 Ark. App. 563, 701 S.W.3d 34, it is not applicable here because the federal regulation in question was not in effect when Poe signed the Agreement. Nevertheless, we note that *Watson* currently has a motion for rehearing pending with this court.

inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question. *Id.*

In *Lamb*, *supra*, the Arkansas Supreme Court examined issues of unconscionability in the context of nursing home arbitration agreements:

> While "unconscionability" is not precisely defined in the law, one of the earliest applications of the doctrine described an unconscionable contract as one that "no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." In essence, to be unconscionable, a contract must oppress one party and actuate the sharp practices of the other.
>
> In [James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 4-1 (3d ed. 1988)], the concept of unconscionability is analyzed in terms of "procedural unconscionability" and "substantive unconscionability." Procedural unconscionability encompasses contracts where there is an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. Substantive unconscionability generally involves excessive price or restriction of remedies.

*Lamb*, 2016 Ark. 101, at 13–14, 487 S.W.3d at 356–57 (quoting *LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, at 6–7, 429 S.W.3d 261, 264) (internal citations omitted). The court held that Lamb had not met the burden of demonstrating that the arbitration agreement was unconscionable, stating, "Other than bare allegations of inequality of bargaining power and failure to comprehend the above terms, Lamb has failed to demonstrate that the terms of the agreement and the method of negotiation and execution were procedurally unconscionable." *Id.* at 16, 487 S.W.3d at 358. Further, the court held that there was no evidence that the parties failed to comprehend the terms of the agreement. Last, the court rejected an argument that the very nature of arbitration agreements and their

costs make them substantively unconscionable and referenced the strong public policy favoring arbitration in reversing the circuit court's denial of the motion to compel arbitration. *Id.* at 17, 487 S.W.3d at 358. While the court favorably acknowledged that the agreement was not a condition of admission, it was not a critical factor in determining unconscionability in *Lamb*.

Here, while Poe was required to agree to arbitrate disputes as a condition of admission, we find that other factors weigh against unconscionability. First, Belvedere used bold, conspicuous font to indicate that by signing the Agreement, residents are waiving their right to a jury trial. Further, by signing the Agreement, Poe specifically acknowledged that she was "voluntarily" signing the contract "with full knowledge of its terms"; and that "she [was] not required to use the Facility for [her] healthcare needs and that there are numerous other health care providers in the State where [the] Facility is located that are qualified to provide health care." Moreover, Ward does not provide evidence that any of the circumstances surrounding the execution of the Agreement were unconscionable; only that Poe's elderly status made her a vulnerable part of the population with no bargaining power. Additionally, Ward did not allege that Poe lacked the mental capacity to enter into the Agreement; does not assert or present evidence that Poe failed to comprehend the terms of the Agreement; does not allege or set forth any evidence that Belvedere was Poe's only option for nursing-home care in the area; and failed to address the plain language of the Agreement, which clearly states that by signing, Poe acknowledged she was not required to use Belvedere

for her healthcare needs because there were numerous other health care providers available in the area.

Essentially, Ward's argument is based on the assertion that arbitration agreements in the nursing home context are per se unconscionable. However, it is well established that arbitration agreements cannot be considered any differently than any other contract. The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). With the enactment of the FAA, Congress declared a national policy favoring arbitration when the parties contract for that mode of dispute resolution. *Preston v. Ferrer*, 552 U.S. 346 (2008). Likewise, as a matter of public policy, arbitration is strongly favored in Arkansas. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). Therefore, any doubts and ambiguities of coverage will be resolved in favor of arbitration. *Id.*

Accordingly, we do not find that Ward satisfied her burden of proving that the Agreement is unconscionable.

### C. Additional Consideration

Finally, Belvedere contends Ward's argument that the Agreement violates federal regulations—which prohibit LTC facilities from requiring additional consideration as a precondition of admission—is not supported by precedent. Because the circuit court entered a blanket denial of Belvedere's motion to compel, it is unclear whether the court found merit in Ward's "additional consideration" argument. Ward does not advance this argument on appeal; nevertheless, we hold that it lacks merit.

11

Before the circuit court, Ward cited 42 U.S.C. § 1396r(c)(5)(A)(iii), which states,

> With respect to admissions practices, a nursing facility must—in the case of an individual who is entitled to medical assistance for nursing facility services, not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this title, any gift, money, donation, or other consideration as a precondition of admitting . . . the individual to the facility . . . .

Accordingly, Ward maintained that Belvedere's act of requiring residents to sign arbitration agreements as a precondition to admission constituted additional consideration. This particular issue was litigated in *Northport Health Servs. of Ark., LLC v. O'Brien*, and the district court held:

> Both parties mutually agreed to submit disputes to arbitration in lieu of resorting to litigation. The Court finds that such a mutually binding agreement, especially in view of the strong federal policy in favor of arbitrating disputes, is not contemplated as "other consideration" by the Medicaid regulations.

No. 2:10-CV-02013, 2011 WL 1770641, at *7 (W.D. Ark. May 10, 2011). Additionally, the federal court held that "requiring a nursing home admittee to sign an arbitration agreement is not akin to charging or soliciting gifts or money" and does not equate to charging more than allowed by Medicaid—as prohibited by federal regulations. *Id.* at *6. Accordingly, because Belvedere and Ward entered into a mutually binding agreement to arbitrate—and the strong policy in favor of arbitration—we do not find that having Poe sign the Agreement as a condition of admission constitutes "additional consideration" that would render the Agreement unenforceable.

## IV. *Conclusion*

For the reasons set forth above, we find that the circuit court erred by denying Belvedere's motion to compel arbitration; thus, we reverse the court's order and remand for entry of an order compelling arbitration.

Reversed and remanded.

ABRAMSON and WOOD, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Reddick Law, PLLC*, by: *Matthew D. Swindle* and *Heather G. Zachary*, for appellee.