## ARKANSAS NATIONAL LIFE INSURANCE COMPANY *v.* Charles William DURBIN

CA 81-157                                  623 S.W. 2d 548

Court of Appeals of Arkansas
Opinion delivered November 12, 1981

*Friday, Eldredge & Clark*, by: *John Dewey Watson*, for appellant.

*Southern & James*, by: *Dennis L. James*, for appellee.

TOM GLAZE, Judge. This case involves an insurance agent's contract signed and entered into between appellant, Arkansas National Life Insurance Company (Arkansas National), and appellee, Charles Durbin (Durbin), on June 1, 1978. Durbin was terminated by Arkansas National on October 12, 1979, and Durbin subsequently filed a petition in Pulaski County Chancery Court for an accounting of all benefits due him under the parties' contract.

Durbin was rendered judgment on his petition for accounting which was based on the trial court's findings: (1) Durbin's termination was made without good reason, probably in bad faith, and was arbitrary; and (2) The contract was vague, ambiguous and unconscionable. On appeal, Arkansas National challenges these two findings and additionally argues that the trial court awarded relief which was not pled by Durbin.

The issues raised by Arkansas National focus on the following termination clause contained in the parties' contract:

## TERMINATION

If this contract terminates because of any reason other than death or total disability, the Agent's right to commission shall terminate; except that if this contract has been in full force for eighteen full uninterrupted months the Agent's right to commission, during his lifetime, shall be vested.

If this contract terminates because of the Agent's total disability as deemed by the Company in its sole discretion, the Agent's right to commission, during his

lifetime, shall not be affected by this termination as long as his total disability continues.

\* \* \*

In reviewing the chancellor's findings, we disagree that the terms of the contract set out above were ambiguous or vague. The parties simply agreed that Durbin's right to commissions ceased if the contract was terminated for any reason other than death or total disability. If, however, the parties' contract had been in force for a continuous eighteen month period, Durbin's right to commissions would have been vested for life. The record reflects that Durbin worked sixteen months, twelve days before he was discharged by Arkansas National for his "lack of production." Under the contract, unless he died or was disabled, Durbin's right to commissions ended when he was terminated on October 12, 1979, which was approximately one and one-half months short of the eighteen month vesting period agreed upon by the parties.

Arkansas has long recognized the general rule that the right of an insurance agent to commissions on renewal premiums depends upon the contract existing between the agent and the insurance company, or one of its agents. See *Security Life Insurance Company of America* v. *McCray,* 124 Ark. 202, 186 S.W. 819 (1916); also see other cases cited in 36 A.L.R. 3d 958, 970 (1971). In *McCray,* the Supreme Court held the insurance agent's right to commissions under the terms of the parties' agency contract continued only so long as the contract was in force. The court concluded the agent's right to claim commissions ended when the parties terminated their relationship in accordance with the terms of their contract.

In applying the foregoing general rule and the reasoning set out in *McCray,* we hold Durbin's right to claim commissions ended when he was discharged on October 12, 1979. Under the parties' agreement, either Arkansas National or Durbin could for *any* reason terminate the agency relationship. Contrary to the inference which ensues from the chancellor's finding below, good cause or reason was not

required by either Durbin or Arkansas National under the terms of their contract.

Notwithstanding our conclusion that Durbin could be discharged for any reason, he contends additionally that Arkansas National actually fired him because he was disabled; and if he had not been discharged during his disability, Durbin argues further that he would have been in a position to fulfill the terms of the contract and complete his eighteen month period, entitling him to claim commissions for life. In this connection, the contract provides that if the contract is terminated because of Durbin's total disability, his right to commissions during his lifetime shall not be affected by this termination as long as his total disability continues.

Under the facts before us, we find no validity in this additional contention offered by Durbin. His own testimony indicates that he was not disabled and that he was ready to go back to work prior to the date he was discharged on October 12, 1979. Moreover, he testified several times, not that he was discharged due to his disability, but rather that he believed he was probably fired because of his lack of production.

Nevertheless, even if Durbin had been totally disabled when he was discharged and this was also the reason for his discharge, these facts alone do not assist Durbin's quest for vested commissions under the parties' agreement. There is nothing in the agreement which would have prevented Arkansas National from terminating Durbin if he had been disabled. The significant factor, under the terms of the agreement, was that his right to vested commissions would not be affected by his termination "as long as his total disability continues." If Durbin's total disability had continued until or past December 9, 1979, (the date the eighteen month period ended) his right to commissions would have continued until his disability ended and then would have ceased. Durbin's doctor testified, however, that Durbin was ready to return to work on or before November 1, 1979, which was one month before the eighteen month period ended. Based upon the doctor's calculation of disability, and assuming for the sake of argument that disability was the

reason for Durbin's dismissal, the most that Durbin would be entitled to under the contract would be commissions until November 1, 1979. Durbin's own testimony precludes this result. As we mentioned previously, his testimony indicates that his disability ended before he was terminated, therefore his rights under this contract provision never came into being. Under each of the fact situations posed and argued by Durbin, he simply is not entitled to commissions under the clear language of the contract.

As for the trial court's finding that Durbin's termination was made "probably in bad faith," there is no evidence present in the record which supports this finding. There was testimony that Durbin had been fired twice before his illness for his "lack of production." Each time, Durbin's supervisor chose to give Durbin another chance with the company. Both Durbin and this supervisor testified at trial that he was fired for lack of production. Bad faith requires something more than mere speculation, and the record does not support a bad faith finding. If Durbin had been producing insurance contracts in the same, or even near the same, volume as his other colleagues and had evidenced a good work record, yet was terminated immediately before his rights or benefits vested, then the court might conclude there was bad faith on the part of the insurance company. Those facts are not present here. To the contrary, the evidence clearly shows that Durbin never came close to producing the business his colleagues did and his work record was poor.

The final argument made by Durbin is premised on the chancellor's finding that the agency contract was unconscionable. At trial, Durbin never pled that the contract was unconscionable nor did he offer proof in support of such a claim. The chancellor first mentioned his belief that the contract was unconscionable after the case had been fully tried and submitted for decision.

In assessing whether a particular contract or provision is unconscionable, the courts should review the totality of the circumstances surrounding the negotiation and execution of the contract. Two important considerations are whether there is a gross inequality of bargaining power

between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question. *Geldermann & Company, Inc.* v. *Lane Processing, Inc.,* 527 F. 2d 571 (8th Cir. 1975); see also, *Mississippi Home Insurance Company* v. *Adams,* 84 Ark. 431, 106 S.W. 209 (1907).

Durbin presented no evidence on unconscionability touching on the issues of gross inequality of bargaining power and whether he comprehended the termination and commission provisions involved in the contract. Additionally, there is nothing in the record to show that the contract between the parties was not other than that which is commercially reasonable and acceptable in the insurance business. See 1 A. Corbin, *Contracts,* § 128 at 551 (1963).

We reverse and remand this cause with directions to the trial court to vacate its judgment and to dismiss Durbin's petition for accounting.

Reversed and remanded.

COOPER, J., not participating.