Cite as 2020 Ark. 93
# SUPREME COURT OF ARKANSAS
No. CV-19-578

| | |
|---|---|
| SHELTER MUTUAL INSURANCE COMPANY | **Opinion Delivered:** February 27, 2020 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-15-642] |
| V. | |
| EDNA LYLE LOVELACE | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| APPELLEE | REVERSED AND REMANDED. |

**ROBIN F. WYNNE, Associate Justice**

Shelter Mutual Insurance Company appeals from the Jefferson County Circuit Court's orders and judgment in favor of Edna Lyle Lovelace. On appeal, Shelter Mutual argues that the circuit court erred in determining that Shelter Mutual's policy language excluding coverage for an intentional act, as applied to an innocent co-insured, is void against public policy. We reverse and remand for further proceedings consistent with this opinion.

On October 10, 2014, a fire destroyed Edna Lyle Lovelace's home and its contents. Lovelace's estranged husband, Frank T. Williams, Jr., died by suicide inside the home. Before the fire started, Williams left a suicide note, $19,000 in cash, wedding photos, wedding bands, and his truck keys in the mailbox.

Lovelace and Williams purchased a homeowners' policy from Shelter Mutual in April 2014. The policy was in full force and effect when the fire occurred. The homeowner's policy covered accidental direct physical loss to the house except for perils and losses specified in "Exclusions Applicable to Coverages A & B." Relevant here is the following exclusion:

> **We** do not cover any loss or damage if it would not have occurred in the absence of any event or condition listed below . . . .
>
> . . .
>
> 8.  An intentional act by, or at the direction of, any **insured** that a reasonable **individual** would expect to cause the loss for which the **claim** is made.

(Emphasis in original.) Lovelace timely made a claim under the policy and complied with all policy provisions. Shelter Mutual's investigation determined that Williams intentionally caused the fire. It is undisputed that Lovelace was not involved in setting the fire. Shelter Mutual paid the loss payee for the balance due on the mortgage but denied coverage to Lovelace in accordance with the intentional-act exclusion, on the basis that Williams intentionally caused the fire.

Lovelace sued Shelter Mutual, arguing that the policy language allowing Shelter Mutual to deny a claim by an innocent insured because of actions taken by another insured is void as against public policy. Shelter Mutual moved for partial summary judgment on the sole issue of whether the exclusion of coverage to an innocent insured is void as against public policy. Following the denial of its summary judgment motion, Shelter Mutual filed a motion for ruling on the pleadings asking the circuit court to rule on the public policy issue. The circuit court denied this motion. Shelter Mutual also filed a counterclaim for

2

subrogation against Lovelace. Lovelace and Shelter Mutual later filed a joint motion for ruling on the pleadings again requesting a ruling on the public policy issue. The circuit court ruled that the policy's intentional-act exclusion is void as against public policy and later entered judgment against Shelter Mutual and dismissed its counterclaim. The circuit court subsequently awarded Lovelace extra contractual damages. Shelter Mutual timely appealed.

For reversal, Shelter Mutual argues that the circuit court erred in finding that Shelter Mutual's policy language excluding coverage for an intentional act, as applied to an innocent co-insured, is void as against public policy. The parties do not dispute the facts pertinent to the sole matter on appeal—the public policy issue.

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the circuit judge, the motion is treated as one for summary judgment. *Linder v. Ark. Midstream Gas Servs. Corp.*, 2010 Ark 117, at 5, 362 S.W.3d 889, 892. Here, the parties presented trial briefs and supporting evidence to the circuit court, so we consider the order on the motion for judgment on the pleadings as one for summary judgment. Generally, on appeal from an order granting summary judgment, we view the evidence in the light most favorable to the nonmoving party, resolving any doubts and inferences against the moving party. *Shelter Mutual Ins. Co. v. Goodner*, 2015 Ark. 460, at 3, 477 S.W.3d 512, 514. But when the parties agree on the facts, we determine whether the appellee is entitled to judgment as a matter of law. *Id.* We review issues of law de novo. *Id.*

3

It is settled Arkansas law that an insurer may contract with its insured upon whatever terms the parties may agree, so long as those terms are not contrary to statute or public policy. *Id.* at 5, 477 S.W.3d at 515. Where the terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Noland v. Farmers Ins. Co., Inc.,* 319 Ark. 449, 452, 892 S.W.2d 271, 272 (1995). Unless the legislature has specifically prohibited exclusions, courts will not find the restrictions void as against public policy. *Harasyn v. St. Paul Guardian Ins. Co.,* 349 Ark. 9, 15, 75 S.W.3d 696, 699 (2002). We have repeatedly held that the determination of public policy lies almost exclusively with the legislature, and the courts will not interfere with that determination in the absence of palpable errors. *State Farm Mut. Auto. Ins. Co. v. Henderson,* 356 Ark. 335, 342, 150 S.W.3d 276, 280 (2004). It is generally recognized that the public policy of a state is found in its constitution and statutes. *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988).

We examined the intentional-act exclusion as applied to an innocent co-insured in *Noland v. Farmers Insurance Co., Inc.,* 319 Ark. 449, 892 S.W.2d 271 (1995), which involved similar facts. Diarl and Debra Noland purchased a homeowners' policy. After a fire destroyed their house, Debra was convicted of arson in connection with the fire. Farmers refused to pay Diarl under the policy's intentional-act exclusion, which read as follows:

> Intentional Acts. If any insured directly causes or arranges for a loss of covered property in order to obtain insurance benefits, this policy is void. We will not pay you or any other insured for this loss.

4

*Id.* at 452, 892 S.W.2d at 273. We held that the policy terms explicitly excluded payment of insured benefits to "any other insured" for the act of "any insured" causing or arranging for a loss and that Diarl was "precluded from receiving any benefit under these clear terms of the policy." *Id.* We noted that Diarl suggested that this exclusion was contrary to public policy but concluded that

> [h]e offers no Arkansas law or convincing argument to support his suggestion. In fact, the General Assembly has stated its intent to reduce the loss of life and fire damage to property caused by the crime of arson and to control the incidence of arson fraud. See Ark. Code Ann. § 23-88-201 (Repl. 1992). In sum, Mr. Noland has failed to show any contravention of public policy.

*Id.* at 453, 892 S.W.2d at 273.

This court in *Noland* relied on our earlier holding in *Bryan v. Employers National Insurance Corp.*, 294 Ark. 219, 742 S.W.2d 557 (1988). In *Bryan*, a business partner intentionally set fire to the insured premises, and his innocent co-partner sued to recover proceeds under the insurance policy. The policy included this exclusionary language: "This policy does not insure under this form against loss caused by: . . . Any fraudulent, dishonest, or criminal act done by or at the instigation of any insured, partner or joint adventurer in or of any insured." *Id.* at 220, 742 S.W.2d at 558. We denied recovery to the innocent co-partner, concluding that the explicit language of the policy precluded recovery if any insured committed a criminal act. *Id.*

The homeowners' policy terms here are clear and unambiguous. The policy explicitly excludes coverage for losses caused by an intentional act by "any insured."

5

Lovelace and Williams contracted with Shelter Mutual upon these terms. Williams was "any insured" and allegedly engaged in an intentional act when he set fire to the home. Under the clear terms of the policy, and under our precedent, Lovelace would be precluded from recovery if Williams intentionally caused the fire.

Lovelace acknowledges this precedent but argues that the facts here warrant a deviation from our settled rule that an insurance company may deny coverage to an innocent co-insured. In support of her contention that the intentional-act exclusion contravenes public policy, Lovelace raises four arguments.

First, she contends that the intentional-act exclusion as applied to an innocent co-insured imputes the wrongful conduct of one person to another, in violation of public policy against "guilt by association." Arkansas law does not allow the criminal behavior of one person to be imputed to another except under limited circumstances. *See* Ark. Code Ann. § 5-2-402 (Repl. 2013). Denying an innocent person coverage because of the wrongful acts of another is therefore unjust and against Arkansas law, according to Lovelace. She points to this court's holding in *Mechanics' Insurance Co. v. Inter-Southern Life Insurance Co.*, 184 Ark. 625, 43 S.W.2d 81 (1931), to support her contention that she can recover as an innocent co-insured. In *Mechanics'*, we determined that criminal conduct by one owner did not defeat the claim of an innocent co-owner. But *Mechanics'* was decided before *Bryan* and *Noland*, in which we concluded that criminal conduct by one co-insured did preclude recovery by an innocent co-insured, if the explicit language of the insurance policy so allowed. We decline to conclude the opposite here.

6

Lovelace also argues that the intentional-act exclusion as applied to an innocent co-insured does not further the state's policy of reducing the loss of life and fire damage to property caused by arson and controlling the incidence of arson fraud, as set forth in Ark. Code Ann. § 23-88-201 (Repl. 2014). She contends that the exclusion could not deter arson fraud in this instance—because Williams died, he did not and cannot benefit from fraud. Lovelace argues that because she had nothing to do with the fire, denying her recovery because of the actions of her now-deceased husband does not promote the public policy of reducing arson fraud. While the public policy of arson deterrence may be of limited applicability in these specific circumstances—where the insured who engages in the intentional act also dies by suicide—such narrow circumstances do not warrant a conclusion that the application of an intentional-act exclusion to an innocent insured contravenes public policy.

Next, Lovelace contends that she and Williams owned the homeowner's policy as tenants by the entirety because they were married when they purchased the policy. She argues that a spouse cannot unilaterally destroy such a tenancy. *See, e.g., Ford v. Felts*, 3 Ark. App. 235, 238, 624 S.W.2d 449, 451 (1981) ("[A] husband's or a wife's interest in an estate by the entirety cannot be impaired or affected by the sole act of the other."). According to Lovelace, applying the exclusion to deny her recovery under the policy would allow Williams's unilateral actions to destroy the tenancy by the entirety, in violation of Arkansas law. In addition, Lovelace notes that article 9, section 7 of the Arkansas Constitution provides that a woman's property before and after marriage is separate and "shall not be

subject to the debts of her husband." Therefore, she argues that denying her recovery would unconstitutionally subject her property rights in the homeowner's policy to the debts of her husband. Both these arguments emphasize Lovelace's status as an innocent spouse. But the exclusionary language in the policy applies to any co-insured, regardless of the marital relationship between the insured parties. We are not persuaded that Lovelace's marital- property arguments demonstrate that the policy exclusion as applied to an innocent insured contravenes public policy.

Finally, Lovelace argues that the intentional-act exclusion violates the state's public policy of discouraging domestic violence. The General Assembly has identified important governmental interests in protecting victims of domestic abuse and preventing further abuse. Ark. Code Ann. § 9-15-101 (Repl. 2015). Lovelace argues that because damaging a spouse's possessions is considered emotional abuse under Ark. Code Ann. § 9-15-403(1)(F), Williams engaged in emotional abuse when he set the fire that destroyed her home. Therefore, her argument goes, denying Lovelace benefits contravenes public policy deterring domestic violence. We decline to conclude that the policy's intentional-act exclusion as applied to an innocent co-insured contravenes public policy discouraging domestic violence.

Lovelace asks this court to overrule our precedent that an insurance company may deny recovery to an innocent co-insured under the clear terms of the policy. We have repeatedly stated that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Bohot v. State Farm Mut. Auto. Ins.*

*Co.*, 2012 Ark. 22, at 7, 386 S.W.3d 408, 412. She cites numerous cases from other jurisdictions, but this reliance on authority from other jurisdictions is unpersuasive, particularly where we have previously addressed the same issue. *Couch v. Farmers Ins. Co., Inc.*, 375 Ark. 255, 262, 289 S.W.3d 909, 915 (2008).

It is for the General Assembly, not the courts, to establish public policy. *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 87, 281 S.W.3d 721, 727–28 (2008). In the two and a half decades since this court decided *Noland*, the General Assembly has had ample opportunity to establish a public policy that prohibits an insurance company from excluding coverage for losses caused by intentional acts, as applied to an innocent co-insured. It has declined to do so. And unless the legislature has specifically prohibited an exclusion, we will not find a restriction void as against public policy. *Harasyn*, 349 Ark. at 15, 75 S.W.3d at 699. Accordingly, we conclude that the intentional-act exclusion as applied to an innocent co-insured is not void as against public policy.

Shelter Mutual also appeals the circuit court's order awarding Lovelace extra contractual damages based on the judgment against Shelter Mutual. When an insurance company fails to pay the loss within the time specified in the policy, the insured can recover attorneys' fees, interest, and a penalty. Ark. Code Ann. § 23-79-208 (Repl. 2014). Because the circuit court erred in entering judgment in favor of Lovelace, it also erred in awarding her extra contractual damages.

Reversed and remanded.

*Matthews, Sanders & Sayes*, by: *Roy Gene Sanders*, for appellant.

9

*Friday, Eldredge & Clark, LLP*, by:  *Donald H. Bacon*, for appellee.