Cite as 2025 Ark. App.

# ARKANSAS COURT OF APPEALS

DIVISIONS IV & I
No. CV-23-404

| | |
|---|---|
| HICKORY HEIGHTS HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON | Opinion Delivered February 26, 2025 |
| APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-22-2068] |
| V. | HONORABLE LATONYA HONORABLE, JUDGE |
| YASHIKA WATSON, AS GUARDIAN OF THE PERSON AND ESTATE OF ZEOLA ELLIS III | SUBSTITUTED OPINION ON THE GRANT OF REHEARING |
| APPELLEES | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

This is an interlocutory appeal by appellants, Hickory Heights Health and Rehab, LLC; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton (herein collectively referred to as Hickory Heights), from the decision of the Pulaski County Circuit Court finding that the arbitration agreement entered into between Hickory Heights and the appellee, Yashika Watson, as guardian of the person and estate of her father, Zeola Ellis III, was unenforceable. Hickory Heights argues on appeal that the circuit court erred in denying the motion to compel arbitration because the arbitration agreement was

valid and enforceable, and Watson failed to establish any defense to the enforcement of the contract. We disagree and affirm.

On or about February 17, 2021, Yashika Watson, as guardian of the person and estate of her father, Zeola Ellis III, executed an arbitration agreement with Hickory Heights. Mr. Ellis's admission to Hickory Heights was conditioned on her execution of the agreement. Included in the documentation signed by Ms. Watson was an admission agreement and an incorporated a mandatory arbitration agreement. By signing the arbitration agreement, the parties agreed to waive their right to litigate their claims in a court of law before a judge and jury and instead agreed to submit such claims to binding arbitration. The arbitration agreement specifically included claims for negligence and malpractice and claims based on contract or statute.

On March 31, 2022, Watson initiated an action against Hickory Heights alleging causes of action for negligence, medical malpractice, breach of the admission agreement, and violation of the Deceptive Trade Practices Act. Watson alleged that Hickory Heights had breached its duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse, and neglect of Zeola Ellis, who was injured because of the lack of care and treatment he received at Hickory Heights.

Hickory Heights filed a timely answer on May 17 denying Watson's claims and asserting the existence of an arbitration agreement as a defense. Hickory Heights filed its motion to compel arbitration and brief in support on May 25, asserting that all claims brought by Watson were governed by, and subject to, a valid and enforceable agreement to

2

arbitrate contained within the admission agreement. Watson filed her response on June 3 alleging that the arbitration agreement was in violation of federal regulations prohibiting a long-term care (LTC) facility to require that an arbitration agreement be signed as a condition of admission to the facility, was against public policy, and was unconscionable and unenforceable. In Hickory Heights' brief in support of its motion to compel arbitration, Hickory Heights introduced the arbitration agreement. Section 6 of the agreement provided, "Signing this arbitration agreement, as a part of the admission agreement, is a condition of admission."

A hearing on Hickory Heights' motion to compel arbitration was held on February 10, 2023. Watson *inter alia* argued the provisions of 42 C.F.R. § 483.70(n)(1) (2024), which was in effect when the arbitration agreement was executed, rendered the arbitration agreement illegal and in violation of federal regulations and was against public policy as stated by the Centers for Medicare and Medicaid Services (CMS). Watson stated that the regulation was in effect two years prior to her signing the arbitration agreement. Watson further argued that although the regulatory violation may not provide a mechanism for CMS to invalidate an arbitration agreement, it is well established that a regulatory violation does provide a mechanism for a party to a contract to contest enforcement of that contract against them. In no other context would a court turn a blind eye to the fact that a party made a contract that flagrantly violated the law. "As a general rule, an illegal contract is unenforceable; in this regard, a contract which violates or contravenes a constitution, statute or regulation may be illegal, invalid, unenforceable, or void." 17A Am. Jur. 2d Contracts §

3

223 (emphasis added). See also e.g. Am. Fid. Fire Ins. Co. v. Builders United Constr., Inc., 272 Ark. 179, 181, 613 S.W.2d 379, 380 (1981) (contracts entered in violation of a statute are void). On February 17, the circuit court entered an order that found "arbitration agreements that are a condition of admission are unlawful" and that "because the arbitration agreement violates a federal regulation, it is illegal and unenforceable." The court further stated that

> CMS has identified that requiring arbitration agreements as a condition of admission to a nursing home has long been considered a predatory practice that takes advantage of the elderly population. Because of the superior position of the nursing home, the parties to the agreement have unequal bargaining power, and the parties are unfairly balanced when the arbitration agreement is a condition of admission . . . .

The circuit court specifically found in its order that Ms. Watson had no real choice but to sign the agreement and found the arbitration agreement unconscionable. Hickory Heights filed a timely notice of appeal on March 17, 2023.

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); *Madison Cos., LLC v. Williams*, 2016 Ark. App. 610, 508 S.W.3d 901. We review a circuit court's order denying a motion to compel arbitration de novo on the record. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 5, 424 S.W.3d 304, 307. We decide the issues on appeal using the record developed in the circuit court without deference to the circuit court's ruling. *Wyatt v. Giles*, 95 Ark. App. 204, 205, 235 S.W.3d 552, 554 (2006). We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Diamante v. Dye*, 2013 Ark. App. 630, at 4, 430 S.W.3d 196, 199.

4

Further, we recognize that arbitration is strongly favored in Arkansas. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, 485 S.W.3d 669. Even under that standard, we do not reverse absent a showing by an appellant that the circuit court erred. *Diamante, supra.*

The question whether a dispute should be submitted to arbitration is a matter of contract construction. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *May Constr. Co., Inc. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties, and (2) if such an agreement exists, whether the dispute falls within its scope. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119. Even if an arbitration agreement exists and the dispute falls within the scope of the agreement, a court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *BDO Seidman, LLP v. SSW Holding Co., Inc.*, 2012 Ark. 1, at 13, 386 S.W.3d 361, 370 (quoting Federal Arbitration Act 9 U.S.C. § 2). "This permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'" *Id.*, 386 S.W.3d at 370 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); BHC *Pinnacle Point Hosp., LLC v. Nelson*, 2020 Ark. 70, 594 S.W.3d 62.

5

Hickory Heights argues in their brief that Watson did not contest on appeal that the admission and arbitration agreements signed by her satisfy the five elements of a valid contract (competent parties, subject matter, legal consideration, mutual agreement and mutual obligation), and her sole argument below was that the arbitration agreement is illegal and unconscionable and, therefore, unenforceable. In *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357, the supreme court reversed and remanded to the circuit court to first resolve whether there was a valid agreement to arbitrate between the parties. Additionally, the supreme court instructed the circuit court that if it found there was a valid agreement to arbitrate, then it must determine whether the dispute falls within the scope of the agreement. *Id.* Only then could the circuit court consider whether there was a defense that may be applied to invalidate the agreement. *Id.* In *Asset Acceptance*, the court clarified, however, that remand is not required when a circuit court enters a blanket denial of a motion to compel because the court's order constitutes a ruling on all the issues raised by the parties. 2014 Ark. 280, 437 S.W.3d 119. This case is distinguishable from both *Bank of the Ozarks* and *Asset Acceptance* because, in this case, Hickory Heights argued in their brief that "[i]n the interests of efficiency and judicial economy, Appellants ask that this Court recognize that the validity of the Arbitration Agreement is not in question and proceed to consider the

merits of this appeal." We have abided by Hickory Heights' request and recognized the validity of the arbitration agreement and will proceed with the merits of the appeal.[1]

Hickory Heights argues that the court erred when it did not compel arbitration because the admission and arbitration agreements signed by Watson satisfy the five elements of a valid contract pursuant to the requirements of the FAA, and Watson did not prove an affirmative defense. Watson did not dispute that the agreement satisfied the five elements of a valid contract but countered with the argument *inter alia* that the arbitration agreement is in violation of federal regulations that specifically prohibit LTC facilities from requiring applicants or current residents to sign an arbitration agreement as a condition of admission to the facility or to continue to receive care at the facility, and the arbitration agreement is illegal and unenforceable.

In 2019, the CMS published the final version of the rule (Revised Rule) in the Federal Register, to go into effect on September 16, 2019, regarding LTC facilities imposing a requirement that for admission to the facility, the applicant must sign a binding arbitration agreement as a condition of admission. Compliance with the regulation is a condition for participation in the Medicare and Medicaid programs to receive federal funding; however, the Revised Rule does not render a contract illegal. Revision of Requirements for Long-

---

[1]Hickory Heights filed a motion for rehearing and for the first time on appeal argued that this court must remand for a finding on the validity of the agreement first before ruling on its enforceability. It is well established that an appellant cannot complain on appeal that the court erred if the appellant induced, consented to, or acquiesced in the court's position. *Colquitt v. Colquitt*, 2013 Ark. App. 733, at 4–5, 431 S.W.3d 316, 319.

7

Term Care Facilities: Arbitration Agreements, 84 Fed. Reg. 34,718, 34,718 (July 18, 2019) (codified at 42 C.F.R. § 483.70(n)). The rule provided:

> (n) *Binding arbitration agreements.* If a facility chooses to ask a resident or his or her representative to enter into an agreement for binding arbitration, the facility must comply with all of the requirements in this section.
>
> (1) The facility must not require any resident or his or her representative to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility and must explicitly inform the resident or his or her representative of his or her right not to sign the agreement as a condition of admission to, or as a requirement to continue to receive care at, the facility; and,
>
> . . . .
>
> (4) The agreement must explicitly state that neither the resident nor his or her representative is required to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility.

In 2019, Hickory Heights and numerous other LTC facilities brought an action challenging the final CMS Revised Rule that placed requirements on the procedure to be used before LTC facilities that received Medicare and Medicaid funding could enter into predispute arbitration agreements with residents. *See Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Hum. Servs.*, 14 F.4th 856 (8th Cir. 2021). Hickory Heights appealed to the Eighth Circuit Court of Appeals and the *Northport* court disagreed with Hickory Heights and found that the rule did not violate the FAA; the rule did not exceed the statutory authority of the Department of Health and Human Services (HHS); the rule was not arbitrary and capricious; and CMS's failure to comply with requirements of the Regulatory Flexibility Act (RFA) was harmless.

Hickory Heights and other plaintiffs argued in *Northport* that the CMS rule prohibiting LTC facilities from requiring residents to sign arbitration agreements as a condition for admission, 53 C.F.R. § 483.70(n)(1), "restricts the use of arbitration agreements" and violates the FAA. The Eighth Circuit rejected the arguments that the Revised Rule contravenes the equal-treatment principle of the FAA because it "singles out" arbitration agreements, including by regulating LTC facilities' ability to enter into them with residents. The issue presented in *Northport* concerned CMS's authority to promulgate the regulation at issue and its authority—or lack thereof—pursuant to such a regulation to unilaterally cancel contracts made between two other parties, i.e., LTC facilities and their residents. Moreover, the *Northport* court held:

> The Revised Rule . . . does not invalidate or render unenforceable any arbitration agreement. See 84 Fed. Reg. at 34,718 ("This final rule does not purport to regulate the enforcement of any arbitration agreement . . . ."); id. at 34,729 ("CMS does not have the power to annul valid contracts."); see also id. at 34,732 ("This rule in no way would prohibit two willing and informed parties from entering voluntarily into an arbitration agreement."). Instead, it establishes the conditions for receipt of federal funding through the Medicare and Medicaid programs. See id. at 34,733 (noting that LTC facilities may enter into arbitration agreements "so long as they comply with the requirements" finalized in the Revised Rule). So, for example, if an LTC facility entered into an arbitration agreement with a resident without complying with the Revised Rule by requiring the resident to sign as a condition of admission to the facility, see 42 C.F.R. § 483.70(n)(1), the arbitration agreement would nonetheless be enforceable, absent a showing of "generally applicable contract defenses, such as fraud, duress, or unconscionability," *Concepcion*, 563 U.S. at 339; *see* 9 U.S.C. § 2.
>
> ....
>
> Because the Revised Rule does not, in words or effect, render arbitration agreements entered into in violation thereof invalid or unenforceable, it does not conflict with the FAA.

Id. at 868–69. In other words, CMS could not cancel a contract between an LTC facility and a resident by regulatory fiat, but such a contract would remain subject to generally applicable contract defenses, such as fraud, duress, or unconscionability. Our supreme court has held that "[i]llegality of a contract is an affirmative defense." *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 472, 683 S.W.2d 898, 905, *opinion supplemented on denial of reh'g*, 284 Ark. 461, 688 S.W.2d 275 (1985). Therefore, Watson argued below that the arbitration agreement required as a condition of admission was illegal, which is an affirmative defense, and the circuit court agreed. The circuit court found that "arbitration agreements that are a condition of admission are unlawful" and that "because the arbitration agreement violates a federal regulation, it is illegal and unenforceable." "As a general rule, an illegal contract is unenforceable; in this regard, a contract which violates or contravenes a constitution, statute or *regulation* may be illegal, invalid, unenforceable, or void." 17A Am. Jur. 2d *Contracts* § 223, Westlaw (database updated January 2025) (emphasis added). *See also, e.g., Am. Fid. Fire Ins. Co. v. Builders United Constr., Inc.*, 272 Ark. 179, 181, 613 S.W.2d 379, 380 (1981) (contracts entered in violation of a statute are void). In reviewing the validity of a rule or regulation, this court must give the regulation the same presumption of validity as it would a statute. *McLane Co., Inc. v. Davis*, 353 Ark. 539, 110 S.W.3d 251 (2003); *Dep't of Hum. Servs. v. Berry*, 297 Ark. 607, 764 S.W.2d 437 (1989. While we recognize that *Northport* does not hold that a mandatory arbitration agreement is unenforceable between the parties, we do agree that the findings and holding by the Eighth Circuit in *Northport* are relevant and

persuasive, and we, therefore, hold that the court did not err in finding the mandatory arbitration agreement herein unenforceable.

Hickory Heights further argues that the stay of enforcement of the CMS Revised Rule prohibiting LTC facilities from requiring residents to sign arbitration agreements as a condition for admission in *Northpoint* resulted in retroactive application of the Revised Rule because the arbitration agreement was executed during the stay. The Revised Rule at issue became effective before the arbitration agreement herein was executed. However, enforcement of the regulation was temporarily stayed at the time of execution of the agreement pending the litigation and appeal in the District Court and the Eighth Circuit. Because of the temporary stay, Hickory Heights argues that the Revised Rule was applied retroactively but does not cite any caselaw to support its proposition. Assignments of error that are unsupported by convincing authority will not be considered. *Holcombe v. Marts*, 352 Ark. 201, 99 S.W.3d 401 (2003). Here, the Revised Rule became effective prior to the execution of the arbitration agreement, and the temporary stay by the court in *Northport* did not invalidate the rule but merely stayed its enforcement. There is no precedent for a court to invalidate a regulation because of a temporary stay. Once *Northpoint* was affirmed by the Eighth Circuit, the Revised Rule became enforceable as of its effective date of September 16, 2019. Therefore, we find no error and affirm.

11

Hickory Heights next argues that the circuit court erred in finding that the arbitration agreement in this case was unconscionable.[2] The doctrine of unconscionability is meant to prevent oppression and unfair surprise. 7 Joseph M. Perillo, *Corbin On Contracts* § 29.4 (revised ed. 2002). Courts typically consider two types of unconscionability: (1) procedural unconscionability, which relates to the contract-formation process; and (2) substantive unconscionability, which considers "an unfair or unreasonably harsh contractual term which benefits the drafting party at the other party's expense." Richard A. Lord, *8 Williston On Contracts* § 18.10 (4th ed.) Westlaw (May 2024 update). Arkansas courts recognize that unconscionability may invalidate a contract or particular terms within a contract. "In assessing whether a particular contract or provision is unconscionable, the courts should view the *totality of the circumstances* surrounding the negotiation and execution of the contract." *Ark. Nat'l Life Ins. Co. v. Durbin*, 3 Ark. App. 170, 174, 623 S.W.2d 548, 551 (1981) (emphasis added). The two important considerations in the unconscionability analysis are gross inequity in bargaining power between the contracting parties and "whether

---

[2]Hickory Heights, it its motion for rehearing, made an additional argument that the CMS regulation making an arbitration agreement required as a prerequisite of admission illegal violated the FAA. However, Hickory Heights failed to argue this point in its original briefs. On rehearing, arguments not asserted or points not argued in the briefs of the parties cannot be considered by this court. *Smith v. Snider*, 247 Ark. 342, 445 S.W.2d 502 (1969); *Tumlison v. Harville*, 237 Ark. 113, 372 S.W.2d 385 (1963); *Groves v. Keene*, 105 Ark. 40, 150 S.W. 575 (1912); *Burks Motors, Inc. v. Int'l Harvester Co.*, 250 Ark. 641, 645–46, 466 S.W.2d 943, 946–47 (1971). Further, assuming Hickory Heights did timely make this argument, the Eighth Circuit in *Northport* found that the Revised Rule does not violate the FAA, and we adopt that finding.

the aggrieved party was made aware of and comprehended the provision in question." *Id.* at 174–175, 623 S.W.2d at 551.

The circuit court stated in its opinion that "Ms. Watson had no real choice but to sign the agreement. Although Ms. Watson could have gone to another facility, other facilities would have similarly required an arbitration agreement as a condition of admission, and the Court finds arbitration agreement to be unconscionable." Requiring arbitration agreements as a condition of admission to nursing homes has long been considered a predatory practice that takes advantage of the elderly population, as discussed in the history of 42 CFR § 483.70. CMS noted its concern that "allowing these agreements to be used as a condition of admission would affect the fundamental concept that contracts must be entered into voluntarily and with consent. . . ." 84 Fed. Reg. 34,718, at 34,728. CMS further noted its concern that individuals would be "coerced into signing one of these agreements, especially if they believe the resident will not receive the care he or she needs if the agreement is not signed." *Id.* CMS justified its promulgation of the rule by explaining: "We believe the LTC requirements finalized in this rule are essential to ensure that arbitration agreements are not barriers to the resident receiving care and that there is no interference with federal, state, or local officials investigating quality of care issues." *Id.* at 34,720. "Arbitration under the FAA is a matter of consent, not coercion." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Considering the history of the CMS regulation and the facts pertaining to Ms. Watson, we cannot say in the totality of the circumstances, the circuit court erred in finding that the arbitration agreement was unconscionable and unenforceable.

In conclusion, we affirm the circuit court's order.

Affirmed.

VIRDEN, HIXSON, and MURPHY, JJ., join and concur.

ABRAMSON and THYER, JJ., dissent.

**KENNETH S. HIXSON, concurring**. Any analysis of whether a nursing home can condition admission on the execution of a mandatory arbitration agreement would be incomplete without discussing GGNSC *Holdings, LLC v. Lamb*, 2016 Ark. 101, 487 S.W.3d 348. In *Lamb*, the Arkansas Supreme Court almost provided the answer to this question—but not quite. *Hickory Heights* and *Belvedere Nursing & Rehabilitation, Center, LLC v. Ward*, 2025 Ark. App. 57, ___ S.W.3d ___ (which our court delivered last week) present the next step in the progression.

Quoting *Lamb*, the heading of the nursing home arbitration agreement stated that the agreement was "NOT A CONDITION OF ADMISSION-READ CAREFULLY" and contained the following provision:

**THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

14

*Lamb*, 2016 Ark. 101, at 15, 487 S.W.3d at 357–58. The *Lamb* court concluded that the arbitration provision was not procedurally or substantively unconscionable. Of paramount importance to *Hickory Heights* and *Belvedere*, the *Lamb* court stated: "While our decision in no way infringes on the constitutional right to trial by jury, it does recognize *that parties are free to contract* to resolve their disputes by arbitration." *Id.* at 17, 487 S.W.3d at 359 (emphasis added). Clearly, the underpinning of *Lamb* is the residents' freedom to contract.

Here's the rub: *Hickory Heights* and *Belvedere* elevate this question to the next level. In *Hickory Heights* and *Belvedere*, the residents are *not free* to contract to resolve their disputes by arbitration; rather, the residents *are forced* to resolve their disputes by arbitration as a condition of admission. So, the question now is whether Arkansas's medically or mentally infirm residents *can be forced* to resolve their disputes by mandatory binding arbitration as a condition of admission to a nursing home. I think not. This significant public-interest question should be before the Arkansas Supreme Court and not dependent on the vagaries of imperfect recollections (or no recollections if the resident is deceased or incompetent) of years-past preadmission discussions.

On a side note; I would be remiss if I did not proffer the proposition that the affirmative defense of unconscionability should not even be applicable in nursing-home arbitration-agreement litigation. We all know that the burden of proving an affirmative defense is on the resident or, most likely, the representative of the deceased resident's estate. And we know that the question of unconscionability is determined by the circuit court considering the totality of the circumstances in the case. That begs the question: how does

15

the representative of the estate of a deceased resident prove that the arbitration agreement was unconscionable based on conversations that occurred several years earlier prior to admission? Not unlike the arbitration agreement itself that can be the result of "gross inequity in bargaining power," the resident feeling "coerced into signing one of these agreements," and "the parties [being] unfairly balanced,"[1] the resident's representative is in a significantly inferior position to sustain its burden of proving unconscionability when compared with the nursing home's ability to provide evidence of a valid agreement. The nursing home can simply introduce the admissions documents probably through a business-records exception to sustain its burden, while the resident's representative will necessarily be forced to rely on imperfect or nonexistent recollections of events and discussions. The consequences of this disparity of litigation positions will necessarily result in incongruent patchwork opinions that will produce confusion to the bar, the bench, and most importantly, the public. A prime example of this are the three cases recently before the court of appeals. In *Hickory Heights Health & Rehab, LLC v. Watson*, 2024 Ark. App. 563, 701 S.W.3d 34, *Belvedere Nursing & Rehab Center, LLC v. Ward*, 2025 Ark. App. 57, ___ S.W.3d ___, and *Greystone Nursing & Rehab, LLC v. Glover*, 2025 Ark. App. 91, ___ S.W.3d ___, the circuit courts in three different counties each denied the nursing homes' motions to enforce mandatory arbitration agreements. In the present case, *Hickory Heights*, the court of appeals affirmed the circuit court's holding that the mandatory arbitration agreement was

---

[1]Quoting the majority opinion herein.

16

unconscionable and unenforceable.  In *Greystone*, the court of appeals affirmed the circuit court's order on other grounds, leaving intact that the mandatory arbitration agreement was unenforceable.  However, in *Belvedere*, despite the fact that the circuit court found by a totality of the circumstances that the mandatory arbitration agreement was unconscionable and unenforceable, the court of appeals reversed the circuit court and opined that the representative of the estate of the deceased resident did not sufficiently prove the affirmative defense of unconscionability and held that the mandatory arbitration agreement was enforceable.  Hence, we have an incongruous patchwork.

Back to my proffered proposition: Does the traditional notion of unconscionability have a place in today's nursing-home arbitration litigation?

VIRDEN and MURPHY, JJ., join.

**CINDY GRACE THYER, Judge, dissenting**.  Today's majority opinion holds that the arbitration agreement at issue is both unenforceable and unconscionable. I disagree with both conclusions and therefore respectfully dissent.

## I. *Unenforceability*

The circuit court here held that "[a]rbitration agreements that are a condition of admission are unlawful. The arbitration agreement at issue in this matter requires arbitration as a condition of admission in violation of 42 C.F.R. 483.70(n)(1). Because the arbitration agreement violates a federal regulation, it is illegal and unenforceable." The majority upholds that decision, and quoting Am. Jur. 2d *Contracts*, states that "a contract which violates or

17

contravenes a constitution, statute, or regulation may be illegal, invalid, unenforceable, or void."

In reaching this conclusion, the majority gives a nod to the Eighth Circuit's decision in *Northport Health Services of Arkansas, LLC v. United States Department of Health & Human Services*, 14 F.4th 856 (8th Cir. 2021), asserting broadly that it upheld the authority of the Centers for Medicare and Medicaid Services (CMS) "to promulgate the regulation at issue and . . . to unilaterally cancel contracts made between two other parties, *i.e.*, LTCs and their residents." In my view, this interpretation of *Northport* misses the mark and completely ignores that opinion's import to the case at hand.

While CMS's authority to promulgate a given regulation was indeed an issue in *Northport*, the first issue addressed in that opinion was whether 42 C.F.R. 483.70(n)(1) ("the Revised Rule") conflicted with the Federal Arbitration Act (FAA). In that case, Northport Health Services and a group of long-term-care facilities (LTCs) challenged the Revised Rule on the grounds that it restricted the use of arbitration agreements and subjected them to "disfavored treatment" in violation of the FAA. The Eighth Circuit disagreed, holding that the Revised Rule did "not limit or frustrate the enforceability of valid arbitration agreements." *Northport*, 14 F.4th at 867. The court explained as follows:

> [T]he "savings clause" of the FAA permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract. That is, an agreement to arbitrate a dispute may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

18

. . . .

In our reading, the Supreme Court has never applied the FAA to prohibit a federal agency from generally regulating the use of arbitration agreements as CMS does here. Rather, it has construed the FAA simply to limit the circumstances in which arbitration agreements, once entered into, can be rendered invalid or unenforceable.

. . . .

The Revised Rule . . . does not invalidate or render unenforceable any arbitration agreement. *See* 84 Fed. Reg. at 34,718 ("This final rule does not purport to regulate the enforcement of any arbitration agreement . . . ."); *id.* at 34,729 ("CMS does not have the power to annul valid contracts."); *see also id.* at 34,732 ("This rule in no way would prohibit two willing and informed parties from entering voluntarily into an arbitration agreement."). Instead, *it establishes the conditions for receipt of federal funding through the Medicare and Medicaid programs. See id.* at 34,733 (noting that LTC facilities may enter into arbitration agreements "so long as they comply with the requirements" finalized in the Revised Rule). So, for example, *if an LTC facility entered into an arbitration agreement with a resident without complying with the Revised Rule by requiring the resident to sign as a condition of admission to the facility*, see 42 C.F.R. § 483.70(n)(1), *the arbitration agreement would nonetheless be enforceable, absent a showing of generally applicable contract defenses, such as fraud, duress, or unconscionability. CMS would simply enforce the regulation through a combination of administrative remedies, including denial of payment and civil monetary penalties. See* 42 C.F.R. § 488.406; 84 Fed. Reg. at 34,733.

*Id.* at 867–68 (emphasis added) (some internal quotations and citations omitted).

Thus, *Northport* expressly holds that the Revised Rule *does not render an arbitration agreement illegal and unenforceable*, even if signing such an agreement is made a condition of admission. The Revised Rule sets forth the requirements for eligibility of LTCs to receive

19

federal Medicare and Medicaid funding, *see* 42 C.F.R. 483.1(b).[1] It does not interfere with the enforceability of a private agreement in a court of law.

The majority states that it "agree[s] the findings and holding by the Eighth Circuit in *Northport* are relevant and persuasive." It appears that what the majority "agrees" with is the Eighth Circuit's discussion of CMS's policy considerations in promulgating the Revised Rule and an earlier predecessor version of the rule. The *Northport* court detailed the history behind CMS's decision in 2015 to revise the requirements for LTCs' eligibility for participation in Medicare and Medicaid:

> CMS noted the potential benefits of alternative dispute resolution, including arbitration, but also expressed its concern that LTC facilities' "superior bargaining power could result in a resident feeling coerced into signing the agreement," that residents might be waiving the right to judicial relief without full understanding, and that the prevalence of pre-dispute arbitration agreements "could be detrimental to residents' health and safety." [80 Fed. Reg.] 42,211. CMS therefore proposed certain limitations on LTC facilities' use of arbitration agreements, including requirements that the facilities explain such agreements to residents in a form, manner, and language that they understand and that they not treat arbitration agreements as a "condition of admission, readmission, or the continuation of [one's] residence at the facility."

*Id.* at 864.

Notably, however, while the Eighth Circuit acknowledged CMS's rationale for the Revised Rule and the procedural history leading up to the publication of the rule, it did not,

---

[1] "The provisions of this part contain the requirements that an institution must meet in order to qualify to participate as a Skilled Nursing Facility in the Medicare program, and as a nursing facility in the Medicaid program. They serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements for participation in Medicare and Medicaid."

as the majority appears to suggest, apply that rationale to declare that all arbitration agreements required as conditions of admission are presumptively illegal and unenforceable. The majority opinion therefore errs when it ignores *Northport*'s true holding: that an arbitration agreement as a condition of admission is "nonetheless . . . enforceable, absent a showing of 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 868 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 339 (2011).

As a final note on this issue, I would point out that the majority seems to have embraced the notion that public policy--such as that expressed by CMS in promulgating the Revised Rule--alone can be utilized to render arbitration agreements illegal and unenforceable. Our supreme court, however, has been resolute in holding that public policy is declared by the General Assembly, not by courts. *Kimbrough v. Grieve*, 2024 Ark. 34, 685 S.W.3d 225; *Shelter Mut. Ins. Co. v. Lovelace*, 2020 Ark. 93, 594 S.W.3d 84. And our General Assembly has made it clear that it encourages alternative dispute resolution as a matter of public policy. *Wynne-Ark., Inc. v. Richard Baughn Constr.*, 2020 Ark. App. 140, 597 S.W.3d 114.

## II. *Unconscionability*

I also disagree with the majority's analysis of the circuit court's unconscionability finding. On this matter, the circuit court found as follows:

> The arbitration agreement is also unconscionable. CMS has identified that requiring arbitration agreements as a condition of admission to a nursing home has long been considered a predatory practice that takes advantage of the elderly

population. Because of the superior position of the nursing home, the parties to the agreement have unequal bargaining power, and the parties are unfairly balanced when the arbitration agreement is a condition of admission, rendering the agreement unconscionable. Ms. Watson had no real choice but to sign the agreement. Although Ms. Watson could have gone to another facility, other facilities would have similarly required an arbitration agreement as a condition of admission, and the Court finds the arbitration agreement to be unconscionable.

The majority affirms this finding, writing that "[c]onsidering the history of the CMS regulation and *the facts pertaining to Ms. Watson*, we cannot say the circuit court erred in finding that the arbitration agreement was unconscionable."[2] (Emphasis added.)

I emphasize the phrase "the facts pertaining to Ms. Watson" to highlight the specific error the majority makes here. Our supreme court has noted that unconscionability is an affirmative defense, and the burden of proving unconscionability is upon the party asserting the defense. GGNSC *Holdings, LLC v. Lamb*, 2016 Ark. 101, at 14, 487 S.W.3d at 357 (citing *Poff v. Brown*, 374 Ark. 453, 288 S.W.3d 620 (2008)). When an affirmative defense is raised, the party relying on it has the burden of *proving those facts* giving rise to it. *See, e.g., Beeson v. Beeson*, 11 Ark. App. 79, 667 S.W.2d 368 (1984).

Here, there were *no facts* introduced at the hearing on Hickory Heights' motion to compel arbitration that would support a finding of unconscionability. At the hearing, counsel for Watson argued to the court that the agreement was unconscionable because

---

[2]We acknowledge this court's recent decision in *Belvedere Nursing and Rehabilitation Center, LLC v. Ward*, 2025 Ark. App. 57, at 8, ___ S.W.3d ___, ___, in which this court addressed and analyzed the multiple factors that go into assessing the "totality of the circumstances surrounding the negotiation and execution of the contract." *See also* GGNSC *Holdings, LLC v. Lamb*, 2016 Ark. 101, 487 S.W.3d 348. The parties here, however, do not assert or develop an argument that the circuit court erred in failing to address these factors.

there was "no choice about whether or not you can enter into this arbitration agreement or not." The court asked whether Watson had "a chance or an opportunity to go somewhere else." Watson's counsel replied, "Well, *I would assume* she would have an opportunity to go somewhere else[.]" In response, defense counsel stated, "[A]s Your Honor pointed out, people are free to go to other facilities that don't have this agreement. So if Ms. Watson didn't want to be forced into an arbitration––didn't want to sign the arbitration agreement as a condition of admission then she clearly could have gone to another nursing home and certainly, in Pulaski County, we're very lucky, and there are a number of facilities available." Thus, while the court and counsel opined on the availability of nursing homes in the area, absolutely no testimony was presented on this issue. No affidavits or depositions were offered or introduced. The circuit court nevertheless adopted an assumption in concluding that the arbitration agreement was unconscionable.

It is beyond axiomatic that arguments of counsel are not evidence. *Lyon v. The Academy, Inc.*, 2024 Ark. App. 386, 689 S.W.3d 715; *Hix v. Hix*, 2015 Ark. App. 199, 458 S.W.3d 743; *Crane v. Taliaferro*, 2009 Ark. App. 336, 308 S.W.3d 648. When a party bearing the burden of proof fails to present evidence thereon, this court should reverse. *See Webb v. Bowden*, 124 Ark. 244, 268, 187 S.W. 461, 469 (1916) (McCulloch, C.J., dissenting) ("The burden of proof[,] meaning the obligation to establish the truth of the claim by a preponderance of the evidence[,] rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails." (quoting the American and English Encyclopedia of Law (vol. 5, p. 22))). Because Watson failed to present

any proof at all on the affirmative defense of unconscionability, the burden of which was hers, I would hold that her case fails and would therefore reverse.

ABRAMSON, J., joins.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Reddick Law, PLLC*, by: *Matthew D. Swindle* and *Heather G. Zachary*, for appellee.